John E. TURNER, Plaintiff-Appellant,

v.

BIG FOUR AUTOMOTIVE EQUIP-
MENT CORPORATION,
Defendant-Appellee.

No. 74–1273.

United States Court of Appeals,
Fifth Circuit.

April 10, 1975.
Rehearing Denied June 2, 1975.

William Liston, Winona, Miss., H. D. Brock, Greenwood, Miss., for plaintiff-appellant.

Charles C. Jacobs, Jr., Cleveland, Miss., for defendant-appellee.

Before THORNBERRY, COLEMAN and ROSENN,* Circuit Judges.

* Of the Third Circuit, sitting by designation.

COLEMAN, Circuit Judge:

On July 13, 1970, at Greenwood, Mississippi, John E. Turner, the plaintiff-appellant, was employed by the Farmer's Co-op Tire Service. Another Co-op employee, using an XP 100 tire changer powered by air pressure, was repairing a tire for a customer. Upon completion of the repairs to the tire he could not get it to seat on the rim, so Turner went to his assistance. After completing certain preliminary measures Turner was inflating the tire while it remained on the tire changing machine. He checked the air pressure at thirty-five pounds. He began increasing it to forty pounds, normal pressure, when there was a precipitate and unexpected expulsion of air. Both the tire and its rim flew off the machine, first striking Turner about the face and head and finally hitting a ceiling sixteen feet high.

Big Four Automotive Equipment Corporation, manufactured and sold the automatic tire changer. The suit against it for the personal injuries sustained by Turner was founded on allegedly negligent design of the machine and strict liability in tort.

The case began as a jury trial, but at the conclusion of the evidence the District Court directed a verdict for the defendant.

We affirm the judgment of the District Court.

In awarding the directed verdict in favor of Big Four the District Court made the following points from the Bench:

(1). The Court is bound by the decision of the Supreme Court of Mississippi in Walton v. Chrysler Motor Corporation, 229 So.2d 568 (Miss., 1970), and subsequent state cases.

(2). Under Mississippi Supreme Court rulings the product is to be designed and manufactured so as to be reasonably safe for its intended use, but it need not be designed to be accident-proof in the event of misuse, regardless of whether that misuse arises by human element or by external forces.

(3). The undisputed proof is that an external force occurred that unexpectedly exploded this tire when at least thirty-five pounds of pressure were in the tire. The force of the explosion blew the tire off the table by stripping the lugs in the center lock cone.

(4). There is no proof before the Court that the purpose of the tire changer was to inflate the tire while on the table or that the tire changer was a reasonably safe device for inflation.

(5). The manufacturer gave explicit warning to the user to stand back and not bend over the tire while it was being inflated.

(6). This danger was obvious to anyone using a machine of this type, tires do explode. Explosions have velocities of varying and different strengths.

(7). The plaintiff has failed to show that the condition of the machine either caused or contributed to this danger, a danger created altogether by the exploding tire.

(8). The failure of the machine to hold the tire in place, once the explosion occurred, did not constitute a contributing cause of the accident. It was simply a condition that existed once the original accident [the expulsion of air] occurred or, to use the *Walton* language, was a second accident. The failure of the lugs to hold the tire in place was a second accident. It was, in no sense of the word, a part of the original accident.

(9). The plaintiff has failed to make a jury issue within the *Walton* rule.

The Court concluded as follows:

"There has been no proof whatever that any tire changers on the market in 1966 were represented as having, as one of its normal intended purposes, a capacity for holding in place a tire that explodes in the process of inflation, regardless of what make of machine it might be; on the contrary, there were then on the market, and generally used, other devices, such as inflation cages and special valve and gauge arrangements, that were used to inflate a tire to a prescribed pressure with the operator being nowhere near, and thus not being exposed to the danger of an exploding tire.

"In summary, explosions of tires can occur in many ways and under various conditions that would make it altogether unjust to cast upon the manufacturer the duty to anticipate the cause of tires exploding while on the tire-changing machine. The manufacturer's duty is complete and fully discharged where the machine is safe for the purpose intended, i. e., to mount and demount tires. No more than that was represented here by defendant. Warning was adequate to operators by the manufacturer as to the hazards that were known to exist in the process of inflating a tire."

In *Walton, supra,* the Mississippi Supreme Court (per Justice Rodgers) handed down a thoroughly analytical opinion. It rejected the rationale of Larsen v. General Motors Corporation, 8 Cir., 1968, 391 F.2d 495, and the cases which have followed it in other jurisdictions.

It decided, instead, to follow the rationale of Evans v. General Motors Corporation, 7 Cir., 1966, 359 F.2d 822, cert. denied 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70, and numerous other cases which it cited as having agreed with *Evans.*

*Walton* was a case in which the defendant's automobile collided from the rear with one being driven by the plaintiff and stopped at an intersection. When the plaintiff was propelled backward a screw which held a nylon plate on to the seat or backrest of plaintiff's automobile sheared, so that the seat collapsed, throwing the plaintiff into a prone position, thereafter flinging him forward against the steering wheel, from which he was seriously injured. The plaintiff claimed that his injury was caused by the joint negligence of the manufacturer in "improperly designing and in wrongfully, negligently and improperly manufacturing an automobile seat which was not reasonably safe for its intended use."

In its decision, the Supreme Court of Mississippi proceeded to say:

"The issue to be determined here is whether or not this Court will extend the strict liability rule to include a case where the defect in the article sold did not cause the initial accident, but did, when combined with the force put in motion by the accident, add to, or become a part of the cause of injury to a human being, so as to subject manufacturer to liability.

"In the instant case, it is clear that the alleged defect in the automobile did not cause the accident. It is equally clear, however, that the weakness of the bumper and screw did, or could have, added to the seriousness of the plaintiff's injury. The driver of the automobile that crashed into the rear of the automobile operated by the plaintiff caused the accident. Nevertheless, plaintiff believes and charges that he would not have been seriously injured if the back of the automobile seat in which he was riding had not broken so as to let the back flop to a prone position.

. . . . .

"The appellant in the instant case contends that it is the duty of the manufacturer to foresee accidents, and to design its vehicles so as to reduce the possibility of injury to the users of their products. Stating the argument differently: the manufactured product must be reasonably fit for its intended use, free of hidden defects that could render the product unsafe for highway use. It is then argued that it was well known to the manufacturer that automobiles will be 'bumped' or 'rammed from the rear' and that many persons are being killed, hurt and injured by accidents similar to the accident here involved, and that the manufacturer could reasonably foresee that the plaintiff would be injured as a result of the dangerous and faulty design of its product. It was therefore liable to the plaintiff, although the defect in the design of the automobile did not cause the accident, but added to the seriousness or gravity of the injury.

. . . . .

"The strict liability rule for products liability cases adopted by this Court eliminates the necessity to show negligence in the manufacture of the product where it is shown that the product left the hands of the manufacturer in a defective condition, but this rule does not eliminate the requirement that, even where there is a defect in the product, there must be some duty owed to the plaintiff with regard to the defect, growing out of the intended normal use for which the product was manufactured."

The Mississippi Supreme Court held:

"That an automobile manufacturer is not liable for injury arising from defects in the automobile which did not cause or contribute to the cause of the accident, such as a rear-end collision. This is true although such accident may have been foreseeable as a misuse of the manufactured product."

Walton v. Chrysler Motor Corporation, 229 So.2d 568 (1970).

It was not long before the Mississippi Supreme Court had an opportunity to take a second look at the *Walton* rule, Ford Motor Company v. Simpson, 233 So.2d 797 (Miss., 1970). Another automobile collision case, the suit there was based upon negligent design; the injured plaintiff had been thrown against a protruding heater in the car which she occupied. The Court held that under *Walton* the strict liability rule as to manufacturers would not extend to instances where the alleged defect in the second car, or its design, was not the cause *of the initial accident,* 233 So.2d at 798. The judgment for the plaintiff was reversed and rendered. See, also, General Motors Corporation v. Howard, 244 So.2d 726 (Miss., 1971).

A few months before the instant case was tried, this Court had an occasion to apply *Walton* and *Simpson,* Landrum v. Massey-Ferguson, Inc., 5 Cir., 1973, 473 F.2d 543.

We quote from that case, as follows:

"Appellant was loading logs with one of appellee's Model 302 tractors, which had been equipped by the distributor with a hydraulic bucket loader. The loading equipment was substantially customized by the substitution for the bucket of a back plate of unknown origin to which were attached forks manufactured by appellee and retainers fabricated by the distributor, Forestry Equipment Company of Alabama, Inc.

"Appellant was loading the logs onto a truck. He had to travel uphill over wet ground to do so. When the wheels of the tractor began to slip, Landrum raised the log on the loader to a nearly overhead position in order to bring its weight to bear on the back wheels. One of the retainers broke and the log fell from the loader injuring him.

"Appellant's cause of action was based on Massey-Ferguson's failure to equip the tractor with an overhead guard which would have prevented or ameliorated his injuries. The law of Mississippi—which we are bound to follow—rejects the extension of strict liability, Walton v. Chrysler Motor Corporation, Miss., 1969, 229 So.2d 568, and the existence of a cause of action for negligence, Ford Motor Company v. Simpson, Miss., 1970, 233 So.2d 797, on these facts. As Mississippi views this the 'cause' was the breaking of the retainer, not the absence of the overhead protective guard.

"Affirmed."

To be specific, our Court, interpreting *Walton* and *Simpson,* recognized that although the injury instantaneously ensued the breaking of the retainer was the initial accident, barring recovery.

In *Landrum* the manufacturer had neither manufactured nor installed the retainer. In our present case, Big Four Automotive Equipment Corporation had neither manufactured nor supplied the tire which Turner was attempting to seat on the rim attached to the tire changing machine.

Obviously, the tire changing machine was not an air container; the tire was.

Reasonable men, then, could not differ over where the exploding air came from; it had to come from the tire. Under the second accident doctrine this necessarily exonerated the machine and its manufacturer.

Under Mississippi jurisprudence, and our prior interpretation of it, the judgment of the District Court must be

Affirmed.