## VOLKSWAGENWERK AKTIENGESELLSCHAFT *v.*
## Michael Raymond MERRITT

75-28                              531 S.W. 2d 938

Opinion delivered January 12, 1976
[Supplemental Opinion on Denial of Rehearing
Feb. 17, 1976, P. 58A.]

*Barber, McCaskill, Amsler & Jones* and *Herzfeld & Rabin,
P.C.,* New York, N.Y., for appellant.

*Hall, Tucker & Lovell* and *Patton & Brown,* for appellee.

J. FRED JONES, Justice. This is an appeal by Volkswagenwerk Aktiengesellschaft, hereafter referred to as VWAG, from a circuit court judgment in favor of the plaintiff-appellee, Michael Raymond Merritt, in a suit for personal injuries allegedly caused by the negligent design of a Volkswagen automobile.

The facts appear as follows: Mr. Jeffus, Mr. Rickett and the appellee, Mr. Merritt, were friends and neighbors living in and near Benton, Arkansas. Mr. Rickett operated a dog kennel and had arranged to obtain some young dogs for his kennel from an individual in Shreveport, Louisiana. Mr. Jeffus owned a "squareback" station wagon type Volkswagen automobile and by prearrangement he was to drive it in taking Mr. Rickett to Shreveport to pick up the dogs, and Mr. Merritt was going along just for the trip. A wire dog crate was placed behind the back seat practically filling the cargo space in the rear portion of the Volkswagen. The three men left Benton before daylight with Mr. Jeffus driving and with Mr.

Rickett in the front seat beside him on the passenger side and with Mr. Merritt sitting on the back seat behind Mr. Rickett.

As Mr. Jeffus drove his automobile at about 45 miles per hour into a curve to his right on the blacktop highway, he was met by a vehicle traveling in the opposite direction on his side of the highway. Mr. Jeffus was blinded by the lights of the oncoming vehicle and in order to avoid a head-on collision, he steered the automobile to his right and drove it off the highway. The automobile rolled completely over and came to rest in an upright position about 140 feet from where it left the highway. Mr. Rickett was thrown from the vehicle and died as a result of injuries he sustained, Mr. Jeffus only sustained bruises and Mr. Merritt sustained a compression fracture to the twelfth thoracic vertebra in his spine resulting in complete, and apparently permanent, paraplegia with all its grievous side effects.

Mr. Merritt filed suit for personal injuries against the local dealer and the national distributor of the Volkswagen automobile and also against VWAG, the manufacturer. The trial court directed verdicts for the local dealer and the national distributor and the case proceeded to trial against the appellant-defendant manufacturer. The case was tried on the theory and allegations that the upset of the automobile and resulting injuries to Mr. Merritt were the direct and proximate result of the negligence of VWAG in several respects as to the design of the automobile; the principal ones being a high and misplaced center of gravity, narrow wheel base, over and under steering and a sharp and unpadded metal top of the back of the rear seat. The appellant has designated several points on which it relies for reversal, but we find it unnecessary to discuss all of them because we conclude the judgment must be reversed under the appellant's first contention that the trial court should have directed a verdict for the appellant.

There was some evidence that the center of gravity in the automobile here involved was slightly (about two inches) higher than the average American made automobile, but there was no substantial evidence that the center of gravity had anything to do with the automobile turning over in this

case. According to Mr. Jeffus' testimony he was driving about 40 miles per hour when he was forced off the highway by an on-coming vehicle with blinding lights. He turned his automobile suddenly to his right and left the highway to avoid a head-on collision. The automobile skidded sharply to the right into a ditch where it turned over according to the police investigator. The ditch was approximately three feet deep according to a civil engineer who testified. The automobile turned completely over at least one time and then continued to roll on its wheels through stumps and bushes until it came to rest in an upright position among the trees, clear off the highway right-of-way 140 feet from where it first left the highway.

According to Mr. Jeffus' testimony his automobile had been driven 32,000 miles when he purchased it and he had driven it approximately 24,000 miles. He said that when he drove the automobile from the highway, it steered properly; that "it did what he asked it to do." He said his hands froze to the steering wheel after he drove from the highway and he did not remember whether he turned to the right or left after he left the highway. He said he thought the automobile turned over to his left.

Officer Lawson said each lane of the blacktop highway was 12 feet wide; that there was about six feet of pea gravel with an oil base on the shoulder of the highway adjacent to the blacktop, and that there was evidence the automobile turned over in the ditch.

Mr. Johnny Jones testified that he drove an ambulance to the scene of the accident. He said he found Mr. Rickett lying approximately five feet from the rear of the automobile, and found Mr. Merritt lying in the cargo area of the Volkswagen. He did not recall Mr. Merritt's exact position in the automobile.

Mr. Merritt's own testimony is significant. He testified that when Mr. Jeffus swerved to miss the on-coming automobile, he, Merritt, might have blacked out for a few seconds. He said when he came to, he was jammed down into the approximate one-foot space between the dog cage and the

back seat. He said he was doubled up with his back against the dog cage and with his knees up against his chest, with his legs at the knees hanging over the back of the rear seat. He said that when the ambulance arrived, someone removed the dog cage from the automobile and that he lay on his back in the rear of the automobile with his legs still over the top of the back of the rear seat until the ambulance took Mr. Rickett to the hospital and returned for him.

Mr. Merritt then testified as to his hospitalization, surgery and attempts at rehabilitation. His testimony as to his present condition, especially as it relates to the well-known side effects of paraplegia, could arouse nothing but sympathy from anyone not void of human emotions, but the question here is not the extent of Mr. Merritt's injuries. The question is whether his injuries were brought about by the negligence of the appellant in the design and manufacture of the automobile in which Mr. Merritt was riding.

The back of the rear seat in the vehicle here involved had a metal top edge with little upholstering or padding. Mr. Joseph Harris, a consulting physicist, testified as an expert for the appellee. He attempted to reconstruct the accident and demonstrate to the jury the exact position of Mr. Merritt's body at all times while the automobile was in motion after it left the highway. He described in graphic detail the exact position of Mr. Merritt's body at all times while the automobile was rolling completely over. We are not impressed by this witness's testimony. He winds up by saying there was no real impact between Mr. Merritt and any part of the automobile until the very last moment when Mr. Merritt's back impacted across the sharp metal top of the back seat rest, thus causing his *compression* fracture. He said Mr. Merritt *probably* knocked the dog cage back as he fell on his back across the sharp edge of the back seat rest. We can only conclude that this witness's conclusion was pure speculation. It is in contradiction to Mr. Merritt's own testimony that he was wedged into the narrow space between the dog cage and the back seat, and it is in contradiction to the simple mechanics of a *compression* type fracture of a spinal vertebra described by the neurosurgeon who did a laminectomy on Mr. Merritt's spine.

Dr. Adametz, the neurosurgeon who attended Mr. Merritt, testified that Mr. Merritt sustained a *compression* type fracture of the twelfth thoracic vertebral body. He described the fracture as being compressed into a wedge shape on the front side of the vertebral body. He said the back, or posterior portion, of the vertebral body had "exploded" and pushed back into the spinal canal. He said this type injury could only have occurred as a result of *acute flexion* or bending forward.

Dr. Simmons, a practicing physician, examined the back rest of the back seat of the automobile exhibited in evidence, and also examined the x-rays made of Mr. Merritt's injured back. He was then permitted, over objections, to express an opinion as to how the injury occurred. He agreed that the x-rays showed a compression type fracture with displacement. He said that in his opinion the vertebral body came in contact with a rather sharp edge while in a *hyperflexed position* to cause the compression. On cross-examination Dr. Simmons said such contact would be with the "belly" rather than the "back of the back." Dr. Adametz examined Mr. Merritt for internal abdominal injuries and found none. He found abrasions to the anterior and posterior portion of the chest area but there was no mention of abrasions or contusions to the abdomen or to the back adjacent to the twelfth thoracic vertebral body. We conclude that Dr. Simmons' opinion was pure speculation without foundation and we conclude that the jury verdict in this case rested wholly on surmise and conjecture unsupported by any substantial evidence, and that the judgment rendered thereon must be reversed.

We see no reason to discuss the two lines of cases represented by such cases as *Evans* v. *General Motors Corp.*, 359 F. 2d 822 (7th Cir. 1966), and *Larsen* v. *General Motors Corp.*, 391 F. 2d 495 (8th Cir. 1968). The evidence in the case at bar does not bring it within the purview of either *Evans* or *Larsen*. The evidence as to negligence in design of the automobile is thin enough in the case at bar, but there is simply no substantial evidence that the alleged negligence in design was a proximate cause of the automobile's overturn or of Mr. Merritt's injuries. We can only conclude, from the evidence of record, that Mr. Jeffus simply cut his automobile too short for the speed he was traveling and when it hit the ditch, it simply

turned over and Mr. Merritt sustained his compression fracture by acute flexion. There was no evidence to the contrary.

The judgment is reversed and the cause dismissed.

Supplemental Opinion on Denial of Rehearing
delivered February 17, 1976

J. FRED JONES, Justice. On petition for rehearing the appellant makes two contentions we consider worthy of further comment by way of clarification of our original opinion. The appellant states:

"The court did not consider the issue of the seat belts, which was independent of the issue of the *cause of the* roll over.

The court did not consider the film of a demonstration of a roll over and the exactness of the science of physics on the rear seat projection issue."

We did consider the seat belt issue on appeal but failed to separately comment on it in our original opinion.

Seat belts were optional with the purchase of new Volkswagens of the type and at the time the vehicle in this case was manufactured. The front seat was equipped with seat belts which were not in use at the time of the wreck, and the rear seat had brackets for the attachment of seat belts at

the option of the purchaser. The vehicle involved in this case was a previously used vehicle and had been driven 32,000 miles by a previous owner before Mr. Jeffus purchased it. There was no evidence as to whether the rear seat had *ever* been equipped with seat belts. In any event, we found no evidence that the manufacturer was negligent in designing and manufacturing the automobile without rear seat belts, or that their absence was a proximate cause of the appellant's injuries.

We did not consider the roll-over film as substantial evidence of what occurred to the appellant in the case at bar. The roll-over film was produced under more or less controlled conditions and the wreck of Mr. Jeffus's automobile was not. We did thoroughly consider the back seat extension in our original opinion but found no substantial evidence that it contributed in any manner to the appellant's injuries.

The judgment is reversed and the cause dismissed.