Barbara F. EVANS, Personal Representative of the Estate of Roy Evans, Deceased, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 15278.

United States Court of Appeals Seventh Circuit.

April 15, 1966.

Theodore Lockyear, Evansville, Ind., for appellant.

Thomas M. Scanlon, Raymond W. Gray, Jr., Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for defendant-appellee.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Barbara F. Evans, personal representative of the Estate of Roy Evans, deceased, brought this action in the United States District Court to recover damages on behalf of the decedent's widow and four dependent minor children, on the ground that his death was caused by the allegedly negligent design of the 1961 Chevrolet station wagon manufactured by the defendant, General Motors Corporation. Plaintiff's amended complaint in three counts charges negligence, breach of implied warranty, and strict tort liability.

The amended complaint asserts that while decedent was driving across an intersection in the aforementioned station wagon, it was struck from the left side by another automobile, and that the left side of the station wagon collapsed in upon the decedent, inflicting fatal injuries because the station wagon was designed with an "X" frame which did not have side frame rails to protect a driver involved in side impact collisions. Plaintiff's amended complaint incorporated a reprint of a publication in which a rival manufacturer advertises the alleged superiority of its perimeter frame over the "X" frame used by other automobile makers.

Which frame is stronger?
ours
others

After pretrial conferences, oral argument, and submission of briefs, the District Court dismissed the amended complaint on the ground that each count failed to state a claim against the defendant upon which relief could be granted. This appeal followed.

Plaintiff's theory is that the collision which occurred was a foreseeable emergency and that by omitting side frame rails, defendant created an unreasonable risk of harm to occupants of the automobile it manufactured.

Plaintiff asserts that defendant was negligent in designing and in failing to test the design of the automobile; that defendant breached implied warranties that the automobile was of merchantable quality and reasonably fit for use as an automobile; that defendant placed in the stream of commerce an automobile in a dangerous and defective condition in that it was equipped with an "X" frame lacking side frame protection, thus proximately causing the fatal injuries to the decedent when the automobile was involved in a broadside collision, for which the defendant is strictly liable to plaintiff.

■ The major question before us is the nature of the duty which an automobile manufacturer owes to users of its product. This presents an issue of law for the Court. Union Traction Co. of Indiana v. Berry, 1919, 188 Ind. 514, 520–521, 121 N.E. 655, 657, 124 N.E. 737; Kahn v. Chrysler Corporation, D.C., S.D., Tex. 1963, 221 F.Supp. 677, 678.

The defendant concedes that it had a duty to design its automobile to be reasonably fit for the purpose for which it was made, without hiding defects which would make it dangerous to persons so using it.

Plaintiff does not assert that defendant's design could have functioned to avoid the collision. Plaintiff contends that in a trial plaintiff would prove, by expert opinion and subsequently adopted improvements in design by defendant and others, that the solid steel side rails of a perimeter frame provide added protection against impacts on the body sides. Plaintiff argues that the defendant's "X" frame permitted the side of the automobile to collapse against the decedent when his station wagon was struck broadside by another vehicle. Plaintiff does not assert that the "X" frame caused the decedent's automobile to be driven into the path of the striking car or prevented it from being driven out of that path. Nor does plaintiff contend that the decedent could not have been killed or injured in this same collision had the 1961 Chevrolet station wagon been designed with a perimeter frame.

■■ A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle "more" safe where the danger to be avoided is obvious to all. Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E. 2d 802, 804. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law. Campo v. Scofield, supra, 805.

Plaintiff's reliance on Elliott v. General Motors Corp., 7 Cir., 1961, 296 F.2d 125, and MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, is misplaced. *Elliott* concerned a sharp edged splash shield, hidden from view, but placed where a mechanic would have to put his hands to repair the automobile. While repairing the automobile, Loraine Elliott extended his hand and arm through the splash shield opening, which was designed to allow a mechanic to gain entrance to the engine and oil pan from beneath the automobile. The dangerously sharp and defective edge severed nerves, tendons, muscles, and arteries, permanently disabling his arm and hand, *MacPherson* involved a defective automobile wheel which had been made by another and sold to the manufacturer who failed to inspect it. While the plaintiff in *MacPherson* was riding in the automobile, it collapsed because of the defective wheel.

The other cases on which plaintiff relies are also distinguishable on their facts. We note a few examples. In J. I. Case Co. v. Sandefur, Inc., Indiana, 1964, 197 N.E.2d 519, it was necessary for the plaintiff to step on the cover of an auger in a farm combine to clear the hopper. It collapsed under him because of hidden defects: there was no supporting brace or safety clip, and the lumber and screws used were of insufficient strength. In McCloud v. Leavitt Corp., D.C., E.D., Illinois, 1948, 79 F.Supp. 286, a spectator was injured when the defective grandstand in which he was watching a game collapsed under him. In Carpini v. Pittsburgh & Weirton Bus Co., 3 Cir., 1954, 216 F.2d 404, a petcock used to drain the air chamber of the brake system of a bus was located too close to the ground. It broke off on debris in the street. The brakes failed. The driver lost control of the bus. In Ford Motor Co. v. Zahn, 8 Cir., 1959, 265 F.2d 729, the ashtray on the dashboard had a defectively jagged edge which inflicted injuries on a passenger when the automobile brakes were suddenly applied. In Goullon v. Ford Motor Co., 6 Cir., 1930, 44 F.2d 310, the rim of the steering wheel on a tractor broke in the driver's hand.

The products involved in all these cases were unfit for their intended use and in precisely that respect were the cause of accidental injuries.

■ The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons.

■ We cannot agree with the plaintiff that the defendant had a duty to equip all its automobiles with side rail perimeter frames, or that such a duty can be inferred from the mere fact that some of the defendant's, or some of its competitors', automobiles are now made with side rails, or from the opinions of certain experts that perimeter frames are "safer" in a collision. Defendant had a duty to test its frame only to ensure that it was reasonably fit for its intended purpose.

Unlike the defendants in Bird v. Ford Motor Co., D.C., W.D., N.Y., 1936, 15 F. Supp. 590; Baxter v. Ford Motor Co., 1932, 168 Wash. 456, 12 P.2d 409, 88 A.L.R. 521; Bahlman v. Hudson Motor Car Co., 1939, 290 Mich. 683, 288 N.W. 309, cited by the plaintiff, General Motors Corporation did not warrant its product to be free of the condition which actually caused the accident. In Bird and Baxter, the windshields which shattered and cut the plaintiffs in those cases, were expressly represented to be "shatterproof." In Bahlman, the two-piece roof welded with a jagged seam that injured the plaintiff, was expressly represented to be a "seamless steel roof."

It is not alleged that General Motors expressly warranted its automobile to have side rails or to be capable of protecting a driver in broadside collisions; nor can such warranty be implied from the allegations in plaintiff's amended complaint.

Our study of all other points and authorities advanced in favor of plaintiff's position discloses nothing that alters our conclusion that the judgment of the District Court must be affirmed.

Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

The opinion of the court decides that General Motors' duty was, as it concedes, to design its automobile to be reasonably fit for the purpose for which it is made, and free from hidden defects; that notwithstanding General Motors' foreseeability of possible broadside collisions, the "intended purpose" of the automobile does not include its participation in such collisions; that imposition of any requirements that automobiles be made "more" safe for collisions is a legislative function; and that the district

court properly dismissed the complaint for failure to state a claim upon which relief could be granted.

The question before us is whether, assuming the truth of the well-pleaded allegations in the amended complaint, "it appears beyond all doubt" that the plaintiff can prove no set of facts which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The amended complaint was in three counts, charging: negligence in design and testing of the 1961 Chevrolet; breach of the implied warranties of merchantability and fitness for the purpose of its manufacture; and strict liability of the manufacturer for a defective and dangerous automobile.

This is a diversity case; consequently Indiana law controls. No Indiana case has precisely decided the issue before us. But a United States District Court in Greeno v. Clark Equipment Co., 237 F. Supp. 427 (N.D.Ind.1965), and this court in Dagley v. Armstrong Rubber Co., 344 F.2d 245 (7th Cir. 1965), as "Indiana courts" in diversity cases, participated in developing Indiana law in breach of warranty and products liability cases to meet changing conditions. In Greeno the court drew upon "available data" and cases from other jurisdictions for the statement of the rule eliminating the requirement of privity in product liability cases. In Dagley, 344 F.2d at 253, an action for breach of implied warranty, this court observed that the "historical concept of warranty," which required privity of contract, was "outdated in view of the changing policies involved * * * and * * that the interests of society are best served by eliminating the requirement * * *." This court took this step as a sequel to its prior decision in Elliott v. General Motors Corporation, 296 F.2d 125 (7 Cir., 1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962), eliminating the essential of privity in Indiana negligence actions, and that of J. I. Case Co. v. Sandefur, Inc., 197 N.E.2d 519 (1964), in which the Indiana Supreme Court did likewise.

The court in Greeno aptly stated, "The direction of the law is clear." 237 F. Supp. at 432. The direction, in my opinion, leads to greater responsibility of manufacturers in designing, testing and manufacturing products, with a purpose of giving reasonable protection against harm to purchasers in the use of the products for their intended purposes. My view is that the Indiana courts would have the same opinion today on the same issue as that before us.

It is a matter of common knowledge that state and federal authorities, nongovernmental agencies, and legal and medical groups, as well as automotive producers, are currently engaged in research, discussion and hearings inspired by the appalling annual predictable rate of deaths, now more than 45,000 per year,[1] and reported injuries in the hundreds of thousands, from accidents in automobile traffic. It is in the context of traffic realities that the issue before us, it seems to me, must be decided.

The opinion of the court does not state affirmatively what General Motors' duty is. It rejects plaintiff's theory that General Motors, foreseeing the possibility of broadside collisions, had the duty to include side rails in design of the Chevrolet frame, so as to provide reasonable protection against death or injury from broadside collisions; and it inferentially accepts General Motors' theory that its duty was to design its automobile to be reasonably fit for the purpose for which it was made, without hidden defects rendering it dangerous to persons using it for its proper purpose, and that that purpose, as a matter of law, cannot contem-

1. A special report of The Defense Research Institute, Inc., entitled "The Injury Industry and the Law Explosion," p. 1 (Oct., 1965), reported "some 2.8 million traffic injuries and some 48,000 accidental deaths each year." See also Katz, Negligence in Design, 1965 Ins. L.J. 5, 11 (Jan., 1965); Time Essay, "Why Cars Must—and Can—Be Made Safer," Time, Apr. 1, 1966, p. 26.

plate that automobile's participation in a collision.

In my view, General Motors' duty was to use such care in designing its automobiles that reasonable protection is given purchasers against death and injury from accidents which are expected and foreseeable yet unavoidable by the purchaser despite careful use. See Restatement (Second), Torts § 395, especially comments *j* and *k* to this section, and § 398 (1965).

It follows that if plaintiff is able to prove that General Motors violated that duty in failing to include side frame rails in its design, and also proves the other elements entitling her to relief under any of the three counts, she would be entitled to recover unless General Motors can establish a defense to her claims. In any event, it is, in my view, error—once General Motors' duty is recognized—to dismiss this complaint for failure to state a claim upon which relief can be granted. The trier of fact in each case, where

prima facie showing is made, must decide whether the design protection is reasonable, depending on the character of the car involved and other relevant considerations.[2]

The court's opinion notes that in the cases cited by plaintiff the actionable defect itself caused the injury. However, in Carpini v. Pittsburgh and Weirton Bus Co., 216 F.2d 404 (3rd Cir. 1954), an extraneous object cooperated with the faulty design of the petcock to cause the harm, and General Motors, a defendant there, did not dispute its duty of care to the user. And in Ford Motor Co. v. Zahn, 265 F.2d 729 (8th Cir. 1959), the Eighth Circuit Court of Appeals rejected Ford's contention that it was not bound to foresee that another car would "suddenly dart" out of a side road in front of the Ford causing application of the brakes, which then propelled the plaintiff-passenger onto a defective ashtray, injuring his eye. Ford there conceded there was a duty of reasonable care in design and manufacture of its product.[3]

2. The New York Times, March 8, 1966, p. 36M, concluded its editorial "Safety Gets Into Gear," commenting on the recent Senate hearings on automotive safety, with this paragraph:

> The central issue is the "crash-worthiness" of an automobile. Since there are bound to be accidents, no one expects a crash-proof car. But cars can be designed to minimize the effects on the passengers once the collision has occurred. It is old-fashioned to think that such a car would have to look or drive like a Sherman tank. Safety and style need not be enemies.

3. General Motors has argued here that it owed no duty to plaintiff to utilize, in its design of the automobile, a frame which plaintiff alleges would have provided more protection to the driver than the X-frame which General Motors used, even though it is alleged that this manufacturer knew or should have known this fact. The evident basis for this is that the automobile is intended for travel, not colliding with other vehicles or things. Although no collision was involved in Ford Motor Co. v. Zahn, the action of the driver in applying the brakes to avoid another car caused plaintiff to be injured by the defectively designed and manufactured ashtray. This prompted Ford to

argue that "a reasonably prudent person was not required to anticipate or foresee the unusual occurrence and resulting injury to plaintiff," to which the Eighth Circuit responded, in part, 265 F. 2d at 732:

> While the risk of danger was perhaps not as great as that which might inhere in a defective wheel or a defective steering mechanism, nevertheless, the fact remains that plaintiff *did* suffer a serious injury, and the jury could properly consider as a circumstance that in this era of fast moving automobiles, emergencies arise frequently which require the sudden application of brakes which in turn throw the occupants of the automobile forward and against the dashboard. The records reveal that defendant was fully conscious of the necessity of guarding against injuries resulting from such occurrences.

While the possible negligence of the plaintiff's decedent, or the driver of the other car, may present an issue of causation, this should not eliminate from the case the duty of the automotive manufacturer.

It is also of interest to note that not only did a rival manufacturer of General Motors assert, in words and in the reprint produced in the majority opinion,

I recognize that safety standards for automobiles would normally be a legislative matter. The United States Senate is now considering the question of federal standards. The General Services Administration has itself set up standards for automobiles it will purchase. There is currently an abundance of books and magazine and newspaper articles, condemning, as well as defending, the record of manufacturers of automobiles in safety design and production. The particular issue before us is merely a reflection of the broad national issue being debated at this time. But the possibility of future adequate legislative standards does not remove the necessity of presently deciding whether plaintiff should or should not have an opportunity to prove the allegations made in the complaint.

I would reverse the judgment in favor of General Motors on its affirmative defenses to Counts I and II, and on its motion to dismiss Count III; and would remand for further proceedings.

the alleged superiority of a perimeter-type frame over the "weak in the middle" X-frame, but an advertisement for the 1959 Oldsmobile reproduced in plaintiff's brief features the "all-new Guard-Beam Frame" in these words: "It combines heavy U-channel and box-member side rails with a huge center X-member. * * * Solid steel side rails provide added protection against impacts on the body sides."