327 So.2d 201 (1976)
FORD MOTOR COMPANY, Petitioner,
v.
Mary Jo EVANCHO, Respondent.
No. 45844.
Supreme Court of Florida.
February 11, 1976.
A. Lee Bradford and Thomas E. Scott, Jr., of Bradford, Williams, McKay, Kimbrell, *202 Hamann & Jennings, Miami, for petitioner.
Arnold R. Ginsberg, of Horton, Perse & Ginsberg and Sams, Anderson, Alper & Post, for respondent.
OVERTON, Justice.
This is a petition for writ of certiorari to review a decision of the Third District Court of Appeal reported as Evancho v. Thiel, 297 So.2d 40 (Fla.App.3d 1974), and its certification to us of a question of great public interest. We have jurisdiction.[1]
The certified question concerns the liability of an automobile manufacturer for a defective design which enhances or causes injury but is not the cause of the accident. The certified question is as follows:
"WHETHER A MANUFACTURER OF AUTOMOBILES MAY BE LIABLE TO A USER OF THE AUTOMOBILE FOR A DEFECT IN MANUFACTURE WHICH CAUSES INJURY TO THE USER WHEN THE INJURY OCCURS AS THE RESULT OF A COLLISION AND THE DEFECT DID NOT CAUSE THE COLLISION?"
We hold that a manufacturer of automobiles may be liable under certain conditions for a design or manufacturing defect which causes injury but is not the cause of the primary collision.
In the instant case the appellee, Mary Jo Evancho, brought an action for damages resulting from the death of her husband from injuries sustained as a passenger in an automobile collision. The decedent husband was riding in the rear seat of a 1970 Mercury Montego automobile when it collided with a parked automobile. It was alleged that as a result of the collision the decedent was thrown forward where he struck the back of the front seat of the automobile in which he was a passenger. The mechanism designed to lock the front seat to its carrier rail allegedly failed and caused the right side of the front seat to be thrown forward, exposing sharp and pointed edges of the rail upon which the decedent fell, striking his head and sustaining injuries from which he died. The appellee brought her action for damages against the driver of the parked vehicle, the driver-owner of the automobile in which the decedent was a passenger, and its manufacturer, the appellant, Ford Motor Company. She contended the appellant negligently designed and manufactured the track-and-rail mechanism in such a manner that it could not withstand the impact of a person being thrown forward from the back seat in the course of a collision. Ford Motor Company moved to dismiss the complaint on the grounds that the alleged defect did not proximately cause the injuries and death, it appearing that the vehicle was operated in a manner beyond its intended use, and therefore no legal duty existed between Ford Motor Company and the plaintiff. The trial judge granted the motion, dismissing the complaint as to Ford Motor Company. The Third District, in a thorough opinion by Judge Pearson, reversed the trial court and certified the above question to us as an issue of great public interest.
Authority is divided whether automobile manufacturers can be held liable for defects in their cars which, although playing no part in causation of the primary automobile collision, nevertheless increase or bring about injury to occupants through secondary impacts. Two widely cited cases illustrating the opposing viewpoints on this issue are Evans v. General Motors Corporation, 359 F.2d 822 (7th Cir.1966), and Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir.1968).
In Evans, the plaintiff alleged that if the frame of his car had been designed differently, he would have sustained lesser injuries *203 following a broadside collision. The majority opinion held that "A manufacturer is not under a duty to make his automobile accident-proof or foolproof," and that the manufacturer had no duty to make the automobile "crashworthy." The controlling issue in this cause was the breadth of the term "intended use." The majority held:
"The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons."
359 F.2d at 825.
The Evans viewpoint has been followed by courts of several jurisdictions.[2]
The majority of jurisdictions appear, however, to follow Larsen v. General Motors Corporation, supra.[3] In Larsen, a head-on collision impacting on the left front corner of plaintiff's vehicle drove the steering shaft rearward into the plaintiff's head, causing his death. The court rejected the assertion by the automobile manufacturer that accidents are not readily foreseeable, and held that a manufacturer could not close his eyes to such eventualities. The Larsen court reasoned that the "intended use" of an automobile was "not just to provide a means of transportation" but held that the intended use of an automobile "is to provide a means of safe transportation." In doing so, it recognized the frequency with which automobiles are involved in collisions, and held that the probability must be taken into account by designers and manufacturers. It established liability on the automobile manufacturer for injuries sustained in secondary collisions between occupants and components of the vehicle in which they were riding when the injury was caused or enhanced by some such design or manufacturing defect and was reasonably foreseeable and reasonably could have been avoided. This theory does not impose liability on a basis of warranty or strict tort liability; rather, it recognizes a duty of reasonable care on automobile manufacturers based on common law negligence. The Larsen court, in establishing this doctrine, said:
"Accepting, therefore, the principle that a manufacturer's duty of design and *204 construction extends to producing a product that is reasonably fit for its intended use and free of hidden defects that could render it unsafe for such use, the issue narrows on the proper interpretation of `intended use'. Automobiles are made for use on the roads and highways in transporting persons and cargo to and from various points. This intended use cannot be carried out without encountering in varying degrees the statistically proved hazard of injury-producing impacts of various types. The manufacturer should not be heard to say that it does not intend its product to be involved in any accident when it can easily foresee and when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident...
"... Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually, caused by the so-called `second collision' of the passenger with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art.
* * * * * *
"This duty of reasonable care in design rests on common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury. The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many commonsense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here."
In so holding, however, the Larsen court recognized that manufacturers are not insurers and are under no duty to design a crashworthy, accident-proof, or foolproof vehicle.
We adopt the Larsen view, holding that the manufacturer must use reasonable care in design and manufacture of its product to eliminate unreasonable risk of foreseeable injury.
The opinion of the Third District Court is approved, and the certified question is answered affirmatively in accordance with our collective views.[4] The petition for certiorari is discharged.
It is so ordered.
*205 ADKINS, C.J., ENGLAND, J., and LEE, Circuit Judge, concur.
DREW (Retired) J., dissents with opinion.
DREW (Retired) Justice, dissents:
I don't think the "second impact" theory, as accepted by the Court today serves any purpose except to approve a theory that will in most serious accident cases, furnish an additional solvent defendant, viz. the manufacturer of the vehicle involved. It adds nothing to the injured plaintiff's right to recover or his measure of damages. Most objectionable to me, it adopts a theory of foreseeability in tort actions that is palpably unfair and, in most  if not all cases  impossible to protect against. The types of collisions are infinite. How is it possible to "foresee"  or, as the majority put it, to "eliminate unreasonable risk of foreseeable injury" in collisions of motor vehicles? Having approved this theory, however, it will now become the responsibility of the jury under appropriate instructions to make such determination under the facts in each case. This is liability without proper safeguard or limitations.
The books are replete with cases, Law Review articles and textbook views, as acknowledged and cited in the majority opinion on both sides, so it would serve no useful purpose to repeat them here.[1] My views are those set forth in the cases cited in footnote 2 of the majority opinion. The contrary views adopted by the majority opinion may well follow the Court's of a "majority of jurisdictions" but I think the better reasoned cases  particularly under our case law and statutes  are those of the 7th Circuit in Evans v. General Motors[2] and the authorities relied on in that decision.
I therefore, respectfully dissent.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] Schemel v. General Motors, 384 F.2d 802 (7th Cir.1967) (applying Ind. law); McClung v. Ford Motor Co., 472 F.2d 240 (4th Cir.1973) (applying W. Va. law); Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss. 1969); Alexander v. Seaboard Air Line Railroad Co., 346 F. Supp. 320 (W.D N.C. 1971); Shumard v. General Motors Corp., 270 F. Supp. 311 (S.D.Ohio 1967) (decided prior to Larsen, supra); But see Burkhard v. Short, 28 Ohio App.2d 141, 275 N.E.2d 632 (1971).
[3] Arbet v. Gussarson, 66 Wis.2d 551, 225 N.W.2d 431 (1971); Johnson v. American Motors Corp., 225 N.W.2d 57 (N.D. 1974); Mickle v. Blackmon, 252 S.C. 202, 166 S.E.2d 173 (1969); Grundmanis v. British Motor Corp., 308 F. Supp. 303 (E.D.Wis. 1970); Engberg v. Ford Motor Co., 205 N.W.2d 104 (S.D. 1973); Brandenburger v. Toyota Motor Sales, U.S.A., Inc., 162 Mont. 506, 513 P.2d 268 (1973); Bolm v. Triumph Corp., 41 A.D.2d 54, 341 N.Y.S.2d 846 (1973), aff'd 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973); Turner v. General Motors Corp., 514 S.W.2d 497 (Tex. Civ.App. 1974) (application for writ of error refused by S.Ct., there being no reversible error); Volkswagen of America, Inc. v. Young, 272 Md. 201, 321 A.2d 737 (1974); Badorek v. General Motors Corp., 11 Cal. App.3d 902, 90 Cal. Rptr. 305 (1970); Perez v. Ford Motor Co., 497 F.2d 82 (5th Cir.1974) (applying La. law); Turcotte v. Ford Motor Co., 494 F.2d 173 (1st Cir.1974) (applying R.I. law); Green v. Volkswagen of America, Inc., 485 F.2d 430 (6th Cir.1973) (applying Mich. law); Passwaters v. General Motors Corp., 454 F.2d 1270 (8th Cir.1972) (applying Iowa law); Dyson v. General Motors Corp., 298 F. Supp. 1064 (E.D.Pa. 1969) (applying Pa. law); Friend v. General Motors Corp., 118 Ga. App. 763, 165 S.E.2d 734 (1968); Baumgardner v. American Motors Corp., 83 Wash.2d 751, 522 P.2d 829 (1974); Mieher v. Brown, 54 Ill.2d 539, 301 N.E.2d 307 (1973).
[4] We do not attempt to answer the question of whether the automobile manufacturer in this instance is a joint tortfeasor, nor have we considered the appropriateness of defenses concerning lack of use of safety devices within the vehicle. Neither has been properly raised or briefed in this proceeding.
[1] See 118 U.Pa.L.Review (1969) 299 for additional comments and authorities.
[2] 359 F.2d 822 (7th Cir.1966).