**Helen L. HUFF, Administratrix of the Estate of Jessee Huff, Deceased, Plaintiff-Appellant,**

v.

**WHITE MOTOR CORPORATION, Defendant-Appellee.**

No. 76–2086.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1977.

Decided Oct. 4, 1977.

Rehearing and Rehearing In Banc Denied Nov. 14, 1977.

Windle Turley, John Howie, Dallas, Tex., W. Scott Montross, Indianapolis, Ind., for plaintiff-appellant.

Hugh Watson, Indianapolis, Ind., for defendant-appellee.

Before FAIRCHILD, Chief Judge, SWYGERT and WOOD, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal presents the question whether a manufacturer has the duty to design a motor vehicle to avoid subjecting its users to unreasonable risks of harm when a faulty design, although not causing or contributing to the collision, produces or enhances an injury received in the accident. In this products liability action, based on diversity jurisdiction, we must look to Indiana law for the answer. Before starting our quest, we recite the essential facts.

On September 4, 1970 Jessee Huff was driving a truck-tractor manufactured by the defendant White Motor Corporation near Terre Haute, Indiana when it jackknifed on the highway, sideswiped a guardrail, and collided with an overpass support. Aside from the structural damage to the tractor, the fuel tank ruptured and caught fire. The flames engulfed the cab area occupied by Huff. The severe burns he received in the fire caused his death nine days later. Helen L. Huff filed this action seeking damages for wrongful death of her husband based on the theory that the defective design of the fuel system caused the fire that took Huff's life. After discovery procedures were completed, the district court entertained and granted defendant's motion for summary judgment, holding that plaintiff had no claim for relief under Indiana law. The district court cited the decisions of this court in *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir.), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), and in *Schemel v. General Motors Corp.*, 384 F.2d 802 (7th Cir. 1967), *cert. denied*, 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134 (1968), as controlling the outcome.

I

Because the foundation for jurisdiction is diversity of citizenship, we are bound to apply the law of Indiana in this case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There are,

however, no decisions of the Indiana Supreme Court bearing directly on the precise issue: whether a manufacturer has a duty to design a vehicle to avoid subjecting its users to an unreasonable risk of harm where the faulty design does not cause the original collision but rather causes or enhances the injury received in the collision. The federal court, thus, must decide what rule the Indiana Supreme Court would adopt in such a case and apply it. *West v. A.T. & T.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940). In doing so the court should consider all the data which the highest court of the state would consider. *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir. 1967).

## II

The trial court in the instant case made no attempt to predict how the Indiana Supreme Court would decide the issue, but instead cited this circuit's 1966 opinion in *Evans v. General Motors Corp., supra.* In that case the plaintiff sued the manufacturer of the automobile in which her husband was killed as a result of a collision. She argued that a defect in the automobile's design enhanced the decedent's injuries. This court affirmed the dismissal of her complaint for failure to state a claim, holding that the manufacturer owed no duty to design an "accident-proof" vehicle and that the "intended purpose" of an automobile did not include participation in collisions.[1]

The essential facts and contentions in *Evans* are not significantly different from those in the present case. In *Evans* the decedent's automobile was struck on its side by another vehicle. The plaintiff did not claim that the design in any manner caused or contributed to the collision, but only that a different type frame might have saved her husband's life. In the case before us a tractor-trailer unit collided with a guardrail and then hit a concrete wall support for an overpass, causing damage to the tractor including the rupture of a fuel tank. The plaintiff does not claim that any defect in design caused or contributed to the collision; instead she contends that the fuel-system design caused or enhanced the driver's injuries. Thus, were we to follow our precedent in *Evans*, affirmance would be compelled. We are convinced, however, that we should reconsider our previous decision in light of a number of subsequent events, including the adoption of section 402A of the Restatement (Second) of Torts by the Indiana Court of Appeals.[2] *Cornette v. Searjeant Metal Products, Inc.*, 147 Ind. App. 46, 258 N.E.2d 652 (1970). Subsequently, the Indiana Supreme Court, after quoting the text of section 402A and citing *Cornette*, declared "Indiana subscribes to this theory of liability."[3] *Ayr-Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 93, 300 N.E.2d 335, 340 (1973). Although section 402A does not supply a ready answer to the question presented in this case, it does furnish a starting point and states the basic policy in

1. Although the trial court in addition to *Evans* cited *Schemel v. General Motors Corp.*, 384 F.2d 802 (7th Cir. 1967), as controlling in this case, *Schemel* actually dealt with a misuse of the vehicle and analytically is not apposite. *See Latimer v. General Motors Corp.*, 535 F.2d 1020, 1024 (7th Cir. 1976). Insofar as the decision in *Schemel* rests on *Evans*, it is overruled along with *Evans. See infra* at 109–110.

2. Pursuant to an amendment to the State Constitution, the Indiana Appellate Court became known as the Indiana Court of Appeals. *See* Ind.Const. art. 7, § 5.

3. Restatement (Second) of Torts § 402A states:
   Special Liability of Seller of Product for Physical Harm to User or Consumer
   (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   (2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

the area of strict liability to which the Indiana Supreme Court now subscribes.

The Indiana Court of Appeals has repeatedly applied section 402A in a nonrestrictive manner with a view toward implementing the basic policy considerations justifying the imposition of strict products liability expressed in the comments accompanying the text.[4] For example, in *Perfection Paint & Color Co. v. Konduris*, 147 Ind.App. 106, 258 N.E.2d 681 (1970), the Court of Appeals held section 402A applicable even though no actual sale of the defective product was involved. The court, interpreting section 402A, held that consumers are to be protected from "any harm suffered as a result of a defect in a product being used as intended," and that the protection afforded does not depend upon a "sale." Rather it "attaches to products which are placed in the stream of commerce." *Id.* at 117, 258 N.E.2d at 688. In *Chrysler Corp. v. Alumbaugh*, Ind.App., 342 N.E.2d 908, *modified on other grounds*, Ind.App., 348 N.E.2d 654 (1976), the Court of Appeals, after expressly rejecting a strict construction approach to section 402A, held that the section applied to injured bystanders where they are "within the area of reasonable risk." In extending section 402A the court examined holdings from other jurisdictions on the same issue. The court concluded that the distinction between purchaser and bystander is irrelevant to the policies of a strict products liability theory.

The direction taken by the Indiana Court of Appeals comports with the development of products liability law in other jurisdictions. Since our 1966 decision in *Evans* this area of law has developed significantly, expanding protection for consumers. Because the Indiana courts have continued to follow this trend, and because they tend to look to the progress of this area of law in other jurisdictions, decisions of other forums take on an added significance in our search for the rule which the Indiana Supreme Court would adopt.

In looking to other jurisdictions it becomes clear that our rule in *Evans* is in a distinct minority. The majority of courts have now adopted a rule which was originally formulated by the Eighth Circuit in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968). The plaintiff in *Larsen* claimed that when his car was struck in the front, his injuries were enhanced because of a faulty design and construction of the steering mechanism. The court held that an auto manufacturer has a duty to design and construct its product so as to be reasonably fit for its intended use and reasonably free from hidden defects which would render it unsafe for that use. The key issue was what was meant by "intended use." The court held that "intended use" encompassed foreseeable risks incident to the normal and intended use of an auto. Manufacturers, though not insurers, are "held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel." 391 F.2d at 503. The *Larsen* court also noted "that the environment in which a product is used must be taken into consideration by the manufacturer." *Id.* at 502. We quote additionally from *Larsen* :

> We think the "intended use" construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury . . . . These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding

---

4. Restatement (Second) of Torts § 402A, comment c, states:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it . . . .; that public policy demands that

the burden of accidental injury caused by the products intended for consumption be placed upon those who market them, and treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile, all are foreseeable. . . The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art. *Id.* As can readily be seen, the *Larsen* rule is in direct opposition to that announced in *Evans.*

When *Evans* was decided in 1966, this court was one of the first to consider the "enhanced" injury question. Initially, a few other jurisdictions adopted the *Evans* rule; however, a discernible shift occurred. Today a majority of the jurisdictions which adopted the *Evans* rationale have now rejected *Evans* in favor of *Larsen.*[5] Equally as significant, a number of other jurisdictions adopted the *Larsen* rule after it was formulated in 1968. Currently a clear majority of jurisdictions follow *Larsen.* (*See* Appendix A.) Only three jurisdictions continue to adhere to *Evans.* (*See* Appendix B.) Moreover, no court has followed *Evans* since 1969 when the Mississippi Supreme Court decided *Ford Motor Co. v. Simpson,* 233 So.2d 797 (Miss.1970). Also noteworthy is the fact that commentators have been uniformly critical of the *Evans* rule.[6]

Although we must focus on what rule the Indiana Supreme Court would apply and not on our own preference, we believe that some general observations are appropriate. In light of an expanding extension of protection for consumers in products liability cases, the "intended purpose" rationale in *Evans* as to motor vehicles is unrealistically narrow. The courts have held as to other types of products that manufacturers must anticipate and take precautions against reasonably foreseeable risks in the use of their products. For example, in *Filler v. Rayex Corp.,* 435 F.2d 336 (7th Cir. 1970), this court affirmed the imposition of liability upon a manufacturer of sunglasses that shattered when struck with a baseball, resulting in the loss of a player's eye. Liability was predicated on the fact that the glasses were advertised for use by baseball players, and the court found a breach of the warranty of fitness for a particular purpose. The court also held that the doctrine of strict liability was applicable. The case is analogous to the case at bar because, although the intended use was not to be hit by a baseball, the manufacturer was required to anticipate the reasonably foreseeable risks of use of the glasses. Similarly in *Spruill v. Boyle-Midway, Inc.,* 308 F.2d 79 (4th Cir. 1962), which concerned the consumption of furniture polish by a young child, the Fourth Circuit found that a strict application of "intended purpose" was too narrow. The court required the manufacturer to anticipate the environment in which its product will be used and the reasonably foreseeable risks which its use in the environment entails. Such risks were held to be "inherent in the proper use" of the product. *Id.* at 84.

The rationale of *Spruill* applies equally, as the *Larsen* court recognized, to the use of motor vehicles. Their purpose is to provide a means of transportation. This

---

**5.** Montana—*Bradenburger v. Toyota Motor Sales,* 162 Mont. 506, 513 P.2d 268 (1973); New Jersey—*Huddell v. Levin,* 395 F.Supp. 64 (D.N.J.1975); New York—*Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973); Ohio—*Anton v. Ford,* 400 F.Supp. 1270 (S.D.Ohio 1975); Texas—*Turner v. General Motors Corp.,* 514 S.W.2d 497 (Tex.Civ.App. 1974). *See F022 Frericks v. General Motors Corp.,* 20 Md.App. 518, 317 A.2d 494 (1974), *rev'd,* 274 Md. 288, 336 A.2d 118 (1975).

**6.** *See* Nader & Page, *Automobile Design and the Judicial Process,* 55 Cal.L.Rev. 645 (1967); Note, *Manufacturer's. Liability for an "Uncrashworthy" Automobile,* 52 Cornell L.Q. 444 (1967); Comment, *Automobile Design Liability: Larsen v. General Motors and Its Aftermath,* 118 U.Pa.L.Rev. 299 (1969); Recent Cases, 80 Harv.L.Rev. 688 (1966); Recent Decisions, 42 Notre Dame Lawyer 111 (1966).

involves being driven on streets and highways. When motor vehicles are so being driven, a collision is a foreseeable incident of their normal use. Thus, to say that collisions are not within their "intended purpose" is unrealistic. This view narrowly refuses to include the obvious risks against which a manufacturer can take precautions. It therefore becomes his duty not to manufacture a defective product that subjects its users to an unreasonable risk of harm.

■ One who is injured as a result of a mechanical defect in a motor vehicle should be protected under the doctrine of strict liability even though the defect was not the cause of the collision which precipitated the injury. There is no rational basis for limiting the manufacturer's liability to those instances where a structural defect has caused the collision and resulting injury. This is so because even if a collision is not caused by a structural defect, a collision may precipitate the malfunction of a defective part and cause injury. In that circumstance the collision, the defect, and the injury are interdependent and should be viewed as a combined event. Such an event is the foreseeable risk that a manufacturer should assume. Since collisions for whatever cause are foreseeable events, the scope of liability should be commensurate with the scope of the foreseeable risks.

■ In his dissent in *Evans* Judge Kiley wrote: "The direction [of the law] in my opinion, leads to greater responsibility of manufacturers in designing, testing, and manufacturing products, with a purpose of giving reasonable protection against harm to purchasers in the use of the products for their intended purposes." 359 F.2d at 826. Today we acknowledge Judge Kiley's foresight. The discernible trend in products liability law has been to increase the duty owed by manufacturers for injuries caused by their products. Indiana courts appear to be in step with this movement. We therefore find that we must overrule our previous decision in *Evans* in favor of a rule which we believe the Indiana Supreme Court would adopt if faced with this case.[7]

---

7. This opinion has been circulated among all judges in regular active service. No other active judge except Judge Pell has voted to grant the suggestion for a rehearing *en banc* on the question of overruling *Evans* and *Schemel*.

Circuit Judge Pell, however, filed the following statement in which Circuit Judge Bauer has joined:

For more than a decade the law of the state of Indiana as determined by this court in diversity cases has been that an automobile manufacturer has no duty to design an automobile incapable of causing injury (or capable of minimizing injury) through misuse, even though foreseeable, for a purpose for which the automobile was never supplied. *Evans v. General Motors Corporation*, 359 F.2d 822 (7th Cir. 1966), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70; *Schemel v. General Motors Corporation*, 384 F.2d 802 (7th Cir. 1967), *rehearing en banc denied, cert. denied,* 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134.

Without any really persuasive basis in case law from the Indiana courts, this court has now determined that the state law as thus declared is no longer viable. I do not read any of the Indiana cases cited in the present opinion as going beyond the primary meaning of § 402A of the Restatement (Second) of Torts which is that one is liable who manufactures a product in a defective condition unreasonably dangerous to the user or consumer when the product is being used as was intended. I do not regard "used as intended" to include jackknifing a truck-tractor. The present case appears to me to take this court in declaring Indiana law a giant step beyond what any Indiana court has declared it to be.

Unfortunately, it also appears to me that this court has decided the present case on what it thinks the law should be rather than, as we should, what the current law is. Indeed, as this court observed in *Evans*, at 824, "[p]erhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law." The General Assembly of Indiana has never accepted this invitation; nor have the courts of Indiana seen fit to repudiate *Evans*.

The General Assembly of Indiana has, however, enacted a statute to the effect that the Supreme Court of Indiana may, by rule of court, provide that any United States court of appeals, if it appears to such court "that there are involved in any proceeding before it questions or propositions of the laws of this state, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal appellate court may certify such questions or propositions of the laws of this state to the Supreme Court of this state for instructions concerning such questions or prop-

That rule is the rationale expressed by the Eighth Circuit in *Larsen* : a manufacturer of motor vehicles owes a duty to design and construct its product to be reasonably fit for its intended use and to be reasonably free from hidden defects which would render it unsafe for that use. The intended use of a vehicle encompasses the normal incidents of its being driven on the streets and highways, including the potentiality of collisions. This rule does not make manufacturers insurers of their products. The duty owed requires merely precautions to be taken to protect against an unreasonable risk of injury. Plaintiffs will still have the burden of proving that there is a defect presenting an unreasonable risk of harm and that such defect was the proximate cause of the injury.

The judgment of the district court is reversed.

### APPENDIX A

---

### JURISDICTIONS FOLLOWING LARSEN

| Jurisdiction | Case |
| --- | --- |
| California | *Horn v. General Motors Corp.*, 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976) |
| District of Columbia | *Knippen v. Ford Motor Co.*, 546 F.2d 993 (D.C.Cir. 1976) |
| Florida | *Ford Motor Co. v. Evancho*, 327 So.2d 201 (Fla.1976) |
| Georgia | *Friend v. General Motors Corp.*, 118 Ga.App. 763, 165 S.E.2d 734 (1968) |
| Idaho | *Farmer v. International Harvester*, 97 Idaho 742, 553 P.2d 1306 (1976) |
| Illinois | *Nanda v. Ford Motor Co.*, 509 F.2d 213 (7th Cir. 1974) |
| Iowa | *Passwaters v. General Motors Corp.*, 454 F.2d 1270 (8th Cir. 1972) |
| Kansas | *Garst v. General Motors Corp.*, 207 Kan. 2, 484 P.2d 47 (1971) |
| Kentucky | *Wooten v. White Trucks*, 514 F.2d 634 (5th Cir. 1975) |
| Louisiana | *Perez v. Ford Motor Co.*, 497 F.2d 82 (5th Cir. 1974) |
| Maryland | *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 321 A.2d 737 (1974) |
| Michigan | *Rutherford v. Chrysler Motors Corp.*, 60 Mich.App. 392, 231 N.W.2d 413 (1975) |
| Missouri | *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976) |
| Montana | *Brandenburger v. Toyota Motor Sales*, 162 Mont. 506, 513 P.2d 268 (1973) |
| Nebraska | *Friedrich v. Anderson*, 191 Neb. 724, 217 N.W.2d 831 (1974) |
| New Jersey | *Huddell v. Levin*, 395 F.Supp. 64 (D.N.J.1975) |
| New York | *Bolm v. Triumph Corp.*, 41 A.D.2d 54, 341 N.Y.S.2d 846, *aff'd*, 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973) |
| North Carolina | *Isaacson v. Toyota Motor Sales*, 438 F.Supp. 1 (E.D.N.C., filed June 28, 1976) |

ositions of state law, which certificate the Supreme Court of this state, by written opinion, may answer." Burns Indiana Statutes Annotated, § 33–2–4–1. The Supreme Court of Indiana has accepted this invitation by implementing rule, AP. 15(N), in substantially the statutory language.

It appears doubly unfortunate to me that this court did not also accept the invitation to certify in the circumstances of the present case a question of Indiana law which had been settled in the federal books without apparent state dissent for more than ten years. *See Aldrich v. Aldrich*, 375 U.S. 249, 84 S.Ct. 305, 11 L.Ed.2d 304 (1963), and *Lehman Brothers v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). In the latter case, a diversity case, the Supreme Court vacated the judgment of the court of appeals and remanded so that that court might reconsider whether the controlling issue of Florida law should be certified to the Florida Supreme Court. Certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Id.* at 391, 94 S.Ct. at 1744.

Circuit Judge Tone filed the following statement:

I do not favor rehearing in banc, although, if I had been a member of the panel I probably would have voted to certify in view of the length of time *Evans* has stood unabrogated by the Indiana courts. I do not think the issue of whether to certify is appropriate for rehearing in banc.

| Jurisdiction | Case |
| --- | --- |
| North Dakota | *Johnson v. American Motors Corp.*, 225 N.W.2d 57 (N.D.1974) |
| Ohio | *Anton v. Ford Motor Co.*, 400 F.Supp. 1270 (S.D.Ohio 1975) |
| Oregon | *McMullen v. Volkswagen of America*, 274 Or. 83, 545 P.2d 117 (1976) |
| Pennsylvania | *Dyson v. General Motors Corp.*, 298 F.Supp. 1064 (E.D.Pa.1969) |
| Rhode Island | *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974) |
| South Carolina | *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173 (1969) |
| South Dakota | *Engberg v. Ford Motor Co.*, 205 N.W.2d 104 (S.D.1973) |
| Tennessee | *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973) |
| Texas | *Turner v. General Motors Corp.*, 514 S.W.2d 497 (Tex.Civ.App. 1974) |
| Virginia | *Dreisonstok v. Volkswagenwerk*, 489 F.2d 1066 (4th Cir. 1974) |
| Washington | *Baumgardner v. American Motors Corp.*, 83 Wash.2d 751, 522 P.2d 829 (1974) |
| Wisconsin | *Arbet v. Gussarson*, 66 Wis.2d 551, 225 N.W.2d 431 (1975) |

APPENDIX B

---

JURISDICTIONS FOLLOWING EVANS

| Jurisdiction | Case |
| --- | --- |
| Indiana | *Schemel v. General Motors Corp.*, 384 F.2d 802 (7th Cir. 1967), *cert. denied*, 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134 (1968) |
| West Virginia | *McClung v. Ford Motor Co.*, 333 F.Supp. 17 (S.D.W.Va.1971), *aff'd*, 472 F.2d 240 (4th Cir.), *cert. denied*, 412 U.S. 940, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973) |
| Mississippi | *Walton v. Chrysler Motor Corp.*, 229 So.2d 568 (Miss.1969) |