404 So.2d 1049 (1981)
FORD MOTOR COMPANY, Petitioner,
v.
Willie Lee HILL, et al., Respondents.
No. 58556.
Supreme Court of Florida.
July 23, 1981.
Rehearing Denied November 12, 1981.
Aubrey V. Kendall, Timothy J. Norris and Edward T. O'Donnell of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, and James A. Dixon, Jr., of Dixon, Dixon, Hurst, Nicklaus & Webb, Miami, for petitioner.
Sheldon Schlesinger of Simons & Schlesinger, Fort Lauderdale, Walter H. Beckham, Jr., and Joel D. Eaton of Podhurst, Orseck & Parks, Miami, for Willie Lee Hill, et al.
K.P. Jones of the Law Offices of K.P. Jones, Fort Lauderdale, for Barkett Oil Co.
McDONALD, Justice.
After affirming a judgment against Ford Motor Company entered upon a jury verdict predicated on instructions of strict liability, the Fourth District Court of Appeal certified the following question to be of great public interest:
IS THE COMMON LAW NEGLIGENCE THEORY IN SECOND COLLISION CASES SET FORTH IN EVANCHO STILL VIABLE DESPITE THE ADOPTION OF STRICT LIABILITY IN WEST v. CATERPILLAR TRACTOR COMPANY, INC.?

Ford Motor Co. v. Hill, 381 So.2d 249, 251 (Fla. 4th DCA 1979).[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question by holding that a plaintiff may *1050 proceed in either strict liability or negligence, or both, and we approve the district court's decision.
The pertinent facts of the occurrence as set forth in the opinion of the district court are as follows:
The accident occurred when his [Hill's] tanker truck, overloaded and possessed of bald tires went out of control on a wet highway and spun around sliding backwards onto the median strip. The single unit truck carried over 4,000 pounds of gasoline and oil and when the rear wheels dug into the soft median, the tank tore loose gouging deeply into the soft median, then ground to a halt while the still moving cab slammed into it. This happenstance released two latch hooks securing the hinged cab and it snapped, whip-like, open and then shut again, causing the injuries.
381 So.2d at 250. The apparent reason for the release of the hooks was the forced bending of two parallel lever rods securing the hooks. This bending resulted from the force of the contact between these rods, exposed because of the separation of the tank from the body, and the tank itself. Hill contended that the hooks should have been attached to the lever rods in opposite directions from each other so that if the lever rods were bent in the same direction only one hook would release.
The original complaint, filed prior to publication of West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), did not contain a count in strict liability. After publication of West, however, the trial court ruled that the standard jury instruction on strict liability would be given. The district court affirmed the trial court's action, finding after reviewing the transcripts that the issue of strict liability was at least tried by the implied consent of all parties. Even though Hill did not originally term this action in strict liability, we find the allegations of fact sufficient to support this theory.
This Court recognizes that confusion might have been created by the adoption of strict liability for products liability cases in West and the Court's failure to enunciate what effect, if any, West would have on secondary collision claims and their theory of recovery.[2]
In Ford Motor Co. v. Evancho, 327 So.2d 201 (Fla. 1976), this Court faced the issue of whether automobile manufacturers could be held liable for defects in their cars which, although playing no part in causing a primary automobile collision, nevertheless increase or bring about injury to occupants through secondary impacts. At that time Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.), cert. denied, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), and Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968), expressed the two opposing viewpoints. We adopted the Larsen view, "that the manufacturer must use reasonable care in design and manufacture of its product to eliminate unreasonable risk of foreseeable injury." 327 So.2d at 204. In explaining the Larsen rationale we stated:
This theory [for secondary collision cases] does not impose liability on a basis of warranty or strict tort liability; rather, it recognizes a duty of reasonable care on automobile manufacturers based on common law negligence.
327 So.2d at 203.
West was published five months after Evancho. Without mentioning secondary collision situations, the Court held that a manufacturer may be held liable under the theory of strict liability in tort for injury to a user of a product or a bystander to its use. Because Evancho's negligence approach was not discussed, the issue has arisen as to whether strict liability in tort as well as negligence is a proper theory for enhanced injury cases.
We see no reason to create an illusory distinction between manufacturers *1051 whose products cause a primary collision and those whose products merely enhance or bring about further injury. It would be unreasonable to have the availability of the strict liability theory depend on the cause of the accident rather than the cause of the injury. As stated in West,
strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
336 So.2d at 86-87. It should make no difference whether the injury is caused in a primary collision or a secondary collision, so long as the plaintiff establishes the requisites of West. Most jurisdictions agree.[3]But see Annot., 42 A.L.R.3d 560 (1972).
Ford Motor Company (Ford) contends there are such significant differences between manufacturing flaws (where products do not conform to planned specifications due to manufacturing error) and design defects (where products are produced as designed but the design itself is defective) that this Court should utilize a negligence standard for design defects and permit strict liability for manufacturing errors. Ford reasons that in manufacturing flaws there is a guide, the plan or blueprint of the product, to aid jurors in determining defectiveness, but that no such comparison guide is available for design defects. Instead, Ford contends that the highly technical issues involved in an engineering design choice are too complex for jurors with no engineering training or manufacturing experience. Thus, Ford asserts that the product must be evaluated in terms of how well it performed, taking into account all of the practical and technical problems of the designer's options  a negligence standard.
It appears that analysis of whether a product is in a defective condition unreasonably dangerous to the user involves a negligence analysis in a "design defect" case, unlike the analysis ordinarily required in a "manufacturing flaw" situation. But this does not mean it is erroneous to apply the *1052 doctrine of strict liability to design defect cases. In Huff v. White Motor Corp., 565 F.2d 104 (7th Cir.1977), the Seventh Circuit Court of Appeals overruled its earlier decision in Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.1966), saying:
One who is injured as a result of a mechanical defect in a motor vehicle should be protected under the doctrine of strict liability even though the defect was not the cause of the collision which precipitated the injury. There is no rational basis for limiting the manufacturer's liability to those instances where a structural defect has caused the collision and resulting injury. This is so because even if a collision is not caused by a structural defect, a collision may precipitate the malfunction of a defective part and cause injury. In that circumstance the collision, the defect, and the injury are interdependent and should be viewed as a combined event. Such an event is the foreseeable risk that a manufacturer should assume. Since collisions for whatever cause are foreseeable events, the scope of liability should be commensurate with the scope of the foreseeable risks.
565 F.2d at 109.
Commenting on this language the Nebraska Supreme Court in Hancock v. Paccar, Inc., 204 Neb. 468, 283 N.W.2d 25 (1979), stated:
Such result, based upon either simple logic or the law, makes sense. It would be a strange result if we said that a manufacturer who carefully designs a product and thereafter negligently produces it should be held liable, but a manufacturer who negligently designs the product and thereafter carefully produces it pursuant to the negligent design should be relieved of liability.
Id. at 475, 283 N.W.2d at 33. Moreover, some commentators agree that
[t]he policy reasons for adopting strict tort liability do not change merely because of the type of defect alleged. If a product, due to its design, is dangerous at the time of an accident, that should be sufficient to impose strict tort liability.
2 L. Frumer & M. Friedman, Products Liability § 16A[4][f][iv][D] at 3B-136.2(p) (1981). Contra, Henderson, Renewed Judicial Controversy over Defective Product Design: Toward the Preservation of an Emerging Consensus, 63 Minn.L.Rev. 773 (1979).
We feel that the better rule is to apply the strict liability test to all manufactured products without distinction as to whether the defect was caused by the design or the manufacturing.[4] If so choosing, however, a plaintiff may also proceed in negligence.
Ford filed a third party complaint seeking indemnification and contribution (the contribution claim was later withdrawn) from Hill's employer, Barkett Oil Company. The trial judge dismissed this complaint with prejudice, and the district court affirmed on the authority of Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979); Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977); and Maybarduk v. Bustamante, 294 So.2d 374 (Fla.4th DCA 1974). We adopt its opinion on this issue.
The decision of the district court of appeal affirming the judgment is approved.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
NOTES
[1] This question can be rephrased in two parts:

(1) Does the doctrine of strict liability adopted in West apply to a second collision case, or (2) Is a plaintiff limited exclusively to a negligence action by Evancho?
We answer the first part in the affirmative and the second in the negative.
[2] The Court does not, however, recognize a conflict between Evancho and West. Evancho was a "pre-strict liability" decision, and the Court therefore used negligence terminology.
[3] Caterpillar Tractor Co. v. Beck, 593 P.2d 871 (Alaska 1979); Daly v. General Motors Corp., 20 Cal.3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978); Roberts v. May, 41 Colo. App. 82, 583 P.2d 305 (1978); Smith v. Fiat-Roosevelt Motors, Inc., 556 F.2d 728 (5th Cir.1977) (Fla.); Nicolodi v. Harley-Davidson Motor Co., 370 So.2d 68 (Fla.2d DCA 1979); Friend v. General Motors Corp., 118 Ga. App. 763, 165 S.E.2d 734 (1968), cert. dismissed, 225 Ga. 290, 167 S.E.2d 926 (1969); Farmer v. International Harvester Co., 97 Idaho 742, 553 P.2d 1306 (1976); Buehler v. Whalen, 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460 (1978); Huff v. White Motor Corp., 565 F.2d 104 (7th Cir.1977) (Ind.); Passwaters v. General Motors Corp., 454 F.2d 1270 (8th Cir.1972) (Iowa); Stueve v. American Honda Motors Co., 457 F. Supp. 740 (D.Kan. 1978); Wooten v. White Trucks, 514 F.2d 634 (5th Cir.1975) (Ky.); Perkins v. Volkswagen of America, Inc., 596 F.2d 681 (5th Cir.1979) (La.); Lahocki v. Contee Sand & Gravel Co., 41 Md. App. 579, 398 A.2d 490 (1979), rev'd on other grounds, 286 Md. 714, 410 A.2d 1039 (1980); Rutherford v. Chrysler Motors Corp., 60 Mich. App. 392, 231 N.W.2d 413 (1975); Wagner v. International Harvester Co., 611 F.2d 224 (8th Cir.1979) (Minn.); Cryts v. Ford Motor Co., 571 S.W.2d 683 (Mo. App. 1978); Brandenburger v. Toyota Motor Sales, U.S.A., Inc., 162 Mont. 506, 513 P.2d 268 (1973); Hancock v. Paccar, Inc., 204 Neb. 468, 283 N.W.2d 25 (1979); Devaney v. Sarno, 125 N.J. Super. 414, 311 A.2d 208 (1973), aff'd, 65 N.J. 235, 323 A.2d 449 (1974); Johnson v. American Motors Corp., 225 N.W.2d 57 (N.D. 1974); McMullen v. Volkswagen of America, 274 Or. 83, 545 P.2d 117 (1976); Jeng v. Witters, 452 F. Supp. 1349 (M.D.Pa. 1978), aff'd, 591 F.2d 1335 (3rd Cir.1979); Turcotte v. Ford Motor Co., 494 F.2d 173 (1st Cir.1974) (R.I.); Engberg v. Ford Motor Co., 87 S.D. 196, 205 N.W.2d 104 (1973); Ellithorpe v. Ford Motor Co., 503 S.W.2d 516 (Tenn. 1973); Turner v. General Motors Corp., 584 S.W.2d 844 (Tex. 1979); Baumgardner v. American Motors Corp., 83 Wash.2d 751, 522 P.2d 829 (1974); Austin v. Ford Motor Co., 86 Wis.2d 628, 273 N.W.2d 233 (1979). But see Sealey v. Ford Motor Co., 499 F. Supp. 475 (E.D.N.C. 1980); Volkswagen of America, Inc. v. Young, 272 Md. 201, 321 A.2d 737 (1974).
[4] We agree with Ford that the standard jury instruction on products liability could be improved. We therefore direct the committee on standard jury instructions for civil trials to develop and present to this Court an appropriate instruction which adequately addresses the issue and which reflects the holding of the instant case.