872 So.2d 893 (2004)
STANDARD JURY INSTRUCTIONCIVIL CASES (NO. 02-2).
No. SC02-2130.
Supreme Court of Florida.
April 1, 2004.
Honorable Chris W. Altenbernd, Chair, Supreme Court Committee on Standard Jury Instructions (Civil), Second District Court of Appeal, Tampa, FL; and Tracy Raffles Gunn, Chair, Supreme Court Reporting Committee, Tampa, FL, for Petitioner.
Philip M. Burlington, Chair, AFTL Amicus Curiae Committee, West Palm Beach, FL, and Paul D. Jess, General Counsel, Tallahassee, FL, on behalf of The Academy of Florida Trial Lawyers, Inc., Responding.
PER CURIAM.
The Supreme Court Committee on Standard Jury Instructions in Civil Cases (Committee) has petitioned this Court to consider amendments to the Florida Standard Jury Instructions in Civil Cases. We have jurisdiction. See art. V, § 2(a), Fla. Const.
On October 1, 2002, the Committee filed a Supplemental Report (No. 02-2), proposing changes to current civil jury instructions regarding product liability. Prior to submitting this report to the Court, the Committee published its proposals in the June 15, 2002, edition of The Florida Bar News. The Committee received and considered one comment prior to submitting its proposals to the Court.
Further, on August 27, 2003, the Committee filed an amended report to clarify its October 1, 2002, submission.
The proposed revisions to PL 4, "strict liability (manufacturing flaw)," are intended to provide structure and information in a manner similar to that in current PL 5, "strict liability (design defect)." Accordingly, the proposal to modify PL 4 follows the format of existing PL 5. Further, the proposal strikes the term "manufacturing flaw"[1] and utilizes the phrase "manufacturing defect" to reflect the generally accepted concept that has been applied in decisions rendered in this state. See Restatement (Third) of Torts: Products Liability § 2 (1998).
The proposed amendments to the two "notes on use" sections of the product liability instructions clarify that the instructions do not contain negligence instructions, but that a negligence instruction can be found in charge 3.5, Negligence Issues, as illustrated in Model Charge 8. Further, the proposed notes provide a caution to judges and lawyers concerning the possibility of an inconsistent verdict when both a negligence claim and a defective design claim are submitted to a jury. See, e.g., Consol. Aluminum Corp. v. Braun, 447 So.2d 391 (Fla. 4th DCA 1984); Ashby Div. of Consol. Aluminum Corp. v. Dobkin, 458 So.2d 335 (Fla. 3d DCA 1984).
The Committee's proposal makes two changes to Comment 2 regarding PL 5. First, the proposal updates the case law cited for definitions of the term "unreasonably dangerous." Second, the proposal provides a caution regarding potential two-issue rule problems[2] that might arise if a *894 jury is instructed under PL 5 on both the consumer-expectation test[3] and the risk-utility test.[4]See Zimmer, Inc. v. Birnbaum, 758 So.2d 714 (Fla. 4th DCA 2000).
The proposal amends Comment 5 by striking references to the concept of contributory negligence,[5] and correcting references to the model charge numbers.
The proposal adds new Comment 7, which directs attention to Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981).[6] The proposal merely states that pending further development of Florida law, the Committee takes no position on the sufficiency of the instructions in cases in which the Cassisi inference applies.
Additionally, the attached amendments contain corrections to minor citation errors.
Upon consideration of the Committee's reports, we hereby authorize the publication and use of the revised instruction as set forth in the appendix following this opinion. In doing so, we express no opinion on the correctness of the instruction and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instruction. We further caution all interested parties that the notes and comments associated with the instructions reflect only the opinion of the Committee and are not necessarily indicative of the views of this Court as to their correctness or applicability. The instruction as set forth in the appendix shall be effective when this opinion becomes final. New language is indicated by underlining, and deletions are indicated by struck-through type.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

*895 APPENDIX

PL

PRODUCT LIABILITY

NOTE ON USE
The instructions in t This Part PL PRODUCT LIABILITY do not contain instructions on Negligence. is intended to serve the same purposes, in cases involving asserted product liability based on concepts other than negligence, as are served in negligence cases by Part III ISSUES and Part IV NEGLIGENCE. When alternative issues of negligence are to be submitted, use Charge 3.5 on Negligence Issues, as in Model Charge No. 78.
The issues for your determination on the claim of (claimant) against (defendant) are whether the (describe product) [sold] [supplied] by (defendant) was defective when it left the possession of (defendant) and, if so, whether such defect was a legal cause of [loss] [injury] [or] [damage] sustained by (claimant or person for whose injury claim is made). A product is defective
PL 1 express warranty
if it does not conform to representations of fact made by (defendant), orally or in writing, in connection with the [sale] [transaction], on which (name) relied in the [purchase and] use of the product. [Such a representation must be one of fact, rather than opinion.]
PL 2 implied warranty of merchantability
if it is not reasonably fit for the uses intended or reasonably foreseeable by (defendant).
PL 3 implied warranty of fitness for particular purpose
if it is not reasonably fit for the specific purpose for which (defendant) knowingly sold the product and for which the purchaser bought the product in reliance on the judgment of (defendant).
PL 4 strict liability (manufacturing defect flaw)
if by reason of a manufacturing defect it is in a condition unreasonably dangerous to [the user] [a person in the vicinity of the product]* and the product is expected to and does reach the user without substantial change affecting that condition.
A product is unreasonably dangerous because of a manufacturing defect if it does not conform to its intended design and fails to perform as safely as the intended design would have performed.
PL 5 strict liability (design defect)
if by reason of its design the product is in a condition unreasonably dangerous to [the user] [a person in the vicinity of the product]* and the product is expected to and does reach the user without substantial change affecting that condition.
A product is unreasonably dangerous because of its design if [the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer] [or] [the risk of danger in the design outweighs the benefits].
If the greater weight of the evidence does not support the claim of (claimant), your verdict should be for (defendant).
[However, if the greater weight of the evidence does support the claim of (claimant), then your verdict should be for (claimant) and against (defendant) ]. * * [However, if the greater weight of the evidence does support the claim of (claimant), then you shall consider the *896 defense raised by (defendant). On the defense, the issues for your determination are (state defense issues) ].
"Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

NOTES ON USE
If it is determined that a Negligence instruction is appropriate in addition to a Product Liability (PL) instruction, use charge 3.5 on Negligence Issues as in Model Charge No. 8.
In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. See, e.g., Consol. Aluminum Corp. v. Braun, 447 So.2d 391 (Fla. 4th DCA 1984); Ashby Div. of Consol. Aluminum Corp. v. Dobkin, 458 So.2d 335 (Fla. 3d DCA 1984). See also Moorman v. American Safety Equip., 594 So.2d 795 (Fla. 4th DCA 1992); North American Catamaran Racing Ass'n. v. McCollister, 480 So.2d 669 (Fla. 5th DCA 1985).
*When the injured person is a bystander, use the language in the second pair of brackets. See West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla.1976), and; Sanchez v. Hussey Seating Co., 698 So.2d 1326 (Fla. 1st DCA 1997).
**When defense issues are to be submitted, use the charge contained within this second pair of brackets. In other cases, use the first bracketed sentence instead.

COMMENT
1. Privity. These charges on product liability issues presuppose that any question of privity has been resolved in favor of the claim. For the effect of strict liability doctrine on claims of warranty previously requiring privity, see § 672.318, Florida Statutes Fla. Stat. (1987); Kramer v. Piper Aircraft Corp., 520 So.2d 37, text at 39 and & n. 4 (Fla.1988). Should it be necessary to submit to the jury a factual issue on privity, the committee recommends that it be submitted in the style of a preliminary charge on status or duty as in SJI 3.2.
2. Strict liability (Restatement of Torts 2d § 402A). Charge PL 4, derived from § 402A as adopted in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla.1976), is appropriate for a strict liability claim against the manufacturer based on an alleged manufacturing flaw in the product. In response to Ford Motor Co. v. Hill, 404 So.2d 1049, 1052 n. 4 (Fla.1981), directing the committee to improve its product liability charge, the committee recommends PL 5 for design defect cases, stating standards for determining when a product is "unreasonably dangerous" because of design.
PL 5 defines "unreasonably dangerous" both in terms of consumer expectations, see comment i to § 402A of the Restatement, and in terms weighing the design risk against its utility,. These concepts are discussed in as expressed in decisions from other jurisdictions. See, e.g., Radiation Tech. Inc. v. Ware Constr. Co., 445 So.2d 329, 331 (Fla.1983); Cassisi v. Maytag Co., 396 So.2d 1140, 1143-45 (Fla. 1st DCA 1981); Adams v. G.D. Searle & Co., 576 So.2d 728, 733 (Fla. 2d DCA 1991) (dicta), quoting Barker v. Lull Engineering Co., 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978). Absent more definitive authority in Florida, the committee recommends neither test to the exclusion of the other and expresses no opinion about whether the two charges should be given alternatively or together. PL 5 provides language suitable for either standard, or both, determined by the trial court to be appropriate.
The committee notes, however, that the two issue rule may be implicated if both *897 tests of design defect are used. Zimmer Inc. v. Birnbaum, 758 So.2d 714 (Fla. 4th DCA 2000).
The committee is of the view that, in Florida, the ultimate burden of persuasion in cases submitted to the jury remains with the plaintiff. West, 336 So.2d at 87; but see Barker v. Lull Engineering Co., 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, at 455-56 (1978), quoted in Cassisi, 396 So.2d at 1145. PL 5 therefore allocates that burden to the plaintiff. The charge is not intended to control issues of the burden of proof or sufficiency of the evidence for directed verdict purposes.
Pending further development of Florida law, the committee reserved the question of whether there can be strict liability for failure to warn and, if so, what duty is imposed on the manufacturer or seller.
3. Obvious defects, opportunity to inspect, disclaimers. These concepts are not covered by the standard charges. See Auburn Machine Works Co., Inc. v. Jones, 366 So.2d 1167 (Fla.1979).
4. Uniform Commercial Code. There are many open questions concerning the meaning and application in Florida personal injury litigation of certain U.C.C. provisions. Compare Schuessler v. Coca-Cola Bottling Company of Miami, 279 So.2d 901 (Fla. 4th DCA 1973), with Ford Motor Co. v. Pittman, 227 So.2d 246 (Fla. 1st DCA 1969), cert. denied, 237 So.2d 177 (Fla.1970). Accordingly, the committee has not undertaken to express U.C.C. concepts, as such, in these jury charges. A U.C.C. provision which is held to be applicable may be read or appropriately paraphrased for the jury. In order to avoid undue emphasis, the committee recommends that the provision read or paraphrased not be identified as a statute.
5. Contributory (comparative) Comparative negligence. Comparative negligence is a defense to strict liability claims if based on grounds other than the failure of the user to discover the defect or to guard against the possibility of its existence. West v. Caterpillar, supra n. 2. Model charge 6 7 illustrates the defense of contributory (comparative) comparative negligence in a negligence/express warranty action against a retailer and model charge 7 8 illustrates the same defense in a negligence/strict liability action against a manufacturer and retailer.
6. The committee takes no position regarding whether the injured bystander must be foreseeable. See West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976).
7. Pending further development of Florida law, the Committee takes no position on the sufficiency of these instructions in cases in which the Cassisi inference applies. See Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981); Gencorp, Inc. v. Wolfe, 481 So.2d 109 (Fla. 1st DCA 1985); see also Parke v. Scotty's, Inc., 584 So.2d 621 (Fla. 1st DCA 1991); Miller v. Allstate Ins. Co., 650 So.2d 671 (Fla. 3d DCA 1995).
NOTES
[1] The concept "manufacturing flaw" has been used in only a few reported decisions discussing strict liability issues, the most recent of which was decided in 1984. See Ford Motor Co. v. Hill, 404 So.2d 1049 (Fla.1981); Zyferman v. Taylor, 444 So.2d 1088 (Fla. 4th DCA 1984); Husky Indus., Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983); Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981).
[2] In Barth v. Khubani, 748 So.2d 260, 261 (Fla.1999), this Court stated that the two-issue rule provides:

[W]here there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced.
Whitman v. Castlewood Int'l Corp., 383 So.2d 618, 619 (Fla.1980). The rule is based on the principle that reversal is improper where no error is found as to one of the issues that can independently support the jury's verdict.
[3] Black's Law Dictionary 311 (7th ed.1999) defines the consumer-expectation test, listed under the "consumer-contemplation test," as a "method of imposing product liability on a manufacturer if the evidence shows that a product's danger is greater than what a reasonable consumer would expect."
[4] Black's Law Dictionary 1329 (7th ed.1999) defines the risk-utility test as a "method of imposing product liability on a manufacturer if the evidence shows that a reasonable person would conclude that the benefits of a product's particular design versus the feasibility of an alternative safer design did not outweigh the dangers inherent in the original design.Also termed danger-utility test; risk-benefit test." See also Adams v. G.D. Searle & Co., 576 So.2d 728, 733 (Fla. 2d DCA 1991) (the test weighs a product's benefits against its known risks); Cassisi v. Maytag Co., 396 So.2d 1140, 1145 (Fla. 1st DCA 1981) (the test weighs the utility of the design versus the magnitude of the inherent risk).
[5] In 1973, this Court adopted the comparative negligence doctrine in place of the contributory negligence doctrine. See Hoffman v. Jones, 280 So.2d 431, 438 (Fla.1973).
[6] In Cassisi, the district court of appeal adopted a rule that when a product malfunctions during normal operation, a legal inference of product defectiveness arises, and the injured plaintiff thereby establishes a prima facie case for jury consideration.