933 So.2d 693 (2006)
PHILIP MORRIS USA, INC., a foreign corporation, Appellant,
v.
Ronald J. ARNITZ, Appellee.
No. 2D05-826.
District Court of Appeal of Florida, Second District.
July 21, 2006.
*694 Daniel F. Molony of Shook, Hardy & Bacon, Tampa; William P. Geraghty of Shook, Hardy & Bacon, Miami; and Gary L. Sasso, John R. Blue, Joseph H. Lang, Jr., and Henry G. Gyden of Carlton Fields, P.A., Tampa, for Appellant.
Charles P. Schropp and Amy S. Farrior of Schropp, Buell & Elligett, P.A., Tampa, and Howard M. Acosta and Charles M. Schropp, St. Petersburg, for Appellee.
*695 SILBERMAN, Judge.
In this tobacco litigation, Philip Morris USA, Inc. (Philip Morris), appeals a final judgment in favor of Ronald J. Arnitz (Arnitz) on his claim alleging strict liability for design defects in Philip Morris brand cigarettes. We affirm the final judgment in all respects and write to explain our determination that the trial court did not err in admitting evidence of and instructing the jury on comparative negligence.
Arnitz began smoking cigarettes in the early 1960s, when he was fourteen or fifteen years old. Beginning in the 1970s, Arnitz made numerous unsuccessful attempts to quit smoking. In 2000, he was diagnosed with lung cancer and emphysema. He was unable to quit smoking until he began chemotherapy treatments, and he last smoked in August 2000. The medical testimony that Arnitz presented reflected that his more than thirty-five-year smoking history caused his lung cancer and emphysema.
Arnitz filed his original complaint on June 6, 2000, and filed his amended complaint on June 30, 2000, against Philip Morris and other defendants whom Arnitz subsequently dropped from the lawsuit. The amended complaint asserted claims for negligence, strict liability, and "conspiracy to commit actual fraud." At issue here is the strict liability claim, which alleged design defects in Philip Morris brand cigarettes.
At trial, Arnitz identified three design defects. First, Arnitz presented evidence that Philip Morris used additives or flavorants to overcome the body's natural defenses to inhaling smoke, thus making the cigarettes easier to inhale. Second, Arnitz presented evidence that Philip Morris used as many as 110 to 115 total additives and that some additives changed the form of the nicotine to freebase nicotine; freebase nicotine is absorbed into the cells much faster and can lead to greater nicotine addiction. Third, Arnitz presented evidence that the use of "flue-cured" tobacco, i.e., tobacco that had been exposed to toxic exhaust fumes from propane heaters, increased by as much as ten times the level of carcinogenic tobacco-specific nitrosamines in the tobacco.
In the amended complaint, Arnitz alleged as follows:
At all times material, the ordinary consumer, including the plaintiff, did not in the exercise of ordinary diligence know of the likelihood of, the severity of, or the risks from defendants' tobacco products, which risks are outlined above. However, plaintiff admits he shares comparative fault with defendants and seeks an apportionment of damages.
Arnitz points out on appeal that this allegation reflects that "while Arnitz knew that smoking posed some health risk, he and other consumers did not know of the increased risk posed by the defects in the product." Thus, Arnitz proceeded on the theory that he was partially at fault and that the jury should apportion an appropriate percentage of responsibility to him.
On July 1, 2004, Arnitz filed his notice that he was dropping the conspiracy to defraud claims. On July 6, 2004, Philip Morris filed its notice that it was withdrawing certain affirmative defenses, including its affirmative defense of "comparative fault and/or comparative negligence." Then, on July 22, 2004, Philip Morris filed its motion to strike Arnitz's references in his pleadings to comparative negligence and apportionment of fault. Judge William P. Levens, who was not assigned to try the case, conducted a hearing on Philip Morris's motion on August 4, 2004. He granted Philip Morris's motion to strike references to comparative fault and apportionment of damages in Arnitz's reply to *696 the affirmative defenses. Judge Levens denied Philip Morris's motion to strike Arnitz's "self-limiting admission of fault and apportionment of damages" in the amended complaint and left it to the trial judge to determine whether Arnitz should be free to raise the issue at trial.
On September 2, 2004, Philip Morris filed a motion entitled "Defendant Philip Morris USA Inc.'s Motion in Limine to Exclude Plaintiff's Argument and Evidence of Comparative Fault, and Admit Evidence Regarding Plaintiff's Awareness of the Risks of Smoking and Plaintiff's Smoking Decisions." In it, Philip Morris argued that Arnitz should not be allowed to introduce evidence of comparative fault because Philip Morris had withdrawn that affirmative defense. However, in the same motion it argued that it should be able to present evidence of Arnitz's awareness of the risks of smoking to rebut his design defect claim. Philip Morris argued that it was necessary to show that Arnitz was aware of the dangers of smoking to prove that its cigarettes were not "dangerous to the extent beyond that which would be contemplated by the ordinary consumer," citing Cassisi v. Maytag Co., 396 So.2d 1140, 1144 (Fla. 1st DCA 1981). Philip Morris contended that this evidence could be introduced, subject to a limiting instruction that the jury not consider the evidence as fault on the part of Arnitz.
The trial judge, Judge Sam D. Pendino, heard this motion on October 4, 2004, two days before the beginning of jury selection. Judge Pendino denied the motion and agreed with Arnitz that because he pleaded comparative fault he could present evidence on the issue, even though Philip Morris had withdrawn that defense. Judge Pendino stated, "I can understand if you want to drop your affirmative defense of comparative fault, but to preclude them from presenting whatever case they want to present would not be equitable. They can argue comparative fault in any aspect of a case, particularly if they plead it." Further, the judge stated, "I just don't think that I can tell the plaintiff how they should present their case. They want to admit a certain amount of fault, I'm going to let them."
Later that day, while the court was considering a host of other motions in limine, Arnitz announced that he would be dropping his failure to warn claims and negligence claims entirely; thus, Arnitz was going to proceed to trial solely on the strict liability design defect claim.
In light of these changed circumstances, Philip Morris moved for reconsideration of the trial court's ruling on its motion to preclude Arnitz from introducing evidence of comparative fault. The trial court stated that "if the Defense could use it [comparative fault] in a strict liability case, so can the Plaintiff." After the parties presented case law supporting the proposition that a defendant could raise comparative negligence in a strict liability case, the trial court denied Philip Morris's motion for reconsideration.
A fourteen-day trial ensued, at which both parties presented evidence regarding Arnitz's comparative fault. The trial court instructed the jury on comparative fault. The jury found that Philip Morris placed "Marlboro or Benson & Hedges cigarettes on the market with a defective design which was a legal cause of loss, injury or damage to" Arnitz. The jury awarded a gross award of $600,000 but assigned sixty percent of the responsibility for the damages to Arnitz and forty percent to Philip Morris. Thus, the trial court entered a final judgment for Arnitz in the amount of $240,000.
On appeal, Philip Morris contends that a plaintiff cannot inject comparative *697 fault into a lawsuit and that comparative fault is strictly an affirmative defense for the defendant to raise. We recognize at the outset that comparative fault is generally raised as an affirmative defense. See Florida Patient's Compensation Fund v. Tillman, 487 So.2d 1032, 1035 (Fla.1986) (recognizing that comparative negligence is a defense); see also Fla. R. Civ. P. 1.110(d) (stating that "contributory negligence" is an affirmative defense). Furthermore, the Florida Supreme Court has recognized that a defendant is entitled to raise comparative negligence as a defense in a strict liability case alleging a design defect if based on grounds "other than failing to discover or guard against a defect" and that "lack of ordinary due care could constitute a defense to strict tort liability." West v. Caterpillar Tractor Co., 336 So.2d 80, 90 (Fla.1976); see also Standard Jury InstructionsCivil Cases (No. 02-2), 872 So.2d 893, 897 app. cmt. 5 (Fla. 2004) ("Comparative negligence is a defense to strict liability claims if based on grounds other than the failure of the user to discover the defect or to guard against the possibility of its existence."). Thus, comparative negligence can be raised as a defense in a case alleging a design defect in cigarettes, unless the defendant claims that the plaintiff's fault is in not discovering the alleged defects in the cigarettes. Here, the alleged defects are that the tobacco was flue cured and that the additives made the cigarettes more inhaleable and more dangerous. Although Arnitz asserted that he did not know of these alleged defects, he acknowledged some comparative fault because he knew generally of the hazards of smoking, he should have quit smoking, and perhaps he did not try hard enough to quit.
The fact that comparative negligence may be raised as an affirmative defense does not mean that a defendant can determine how a plaintiff shapes his theory of the case. Arnitz points out on appeal that even though he "acknowledged partial responsibility for his smoking-related injuries, Philip Morris claims to have had the right to censor the presentation of Arnitz' case and to suppress truthful testimony in order to prevent Arnitz' acceptance of partial responsibility from reaching the jury." Philip Morris argues that Bryant v. Fiadini, 405 So.2d 1341 (Fla. 3d DCA 1981), is the "only published Florida appellate decision on point" and that Bryant "compels the conclusion that the trial court committed legal error in permitting Arnitz to force comparative fault into this case" after Philip Morris had waived that defense. The facts in Bryant, however, are distinguishable from the facts here.
In Bryant, the tenants filed a negligence action against their landlord and his insurer for injuries the tenants sustained during a fire in their apartment. The defendants raised the comparative negligence of the tenants for placing a portable heater too close to the bed linens that caught fire. At the charge conference, the tenants requested a jury instruction, which the trial court refused to give, on negligence per se based on an alleged fire code violation. Also at the charge conference, the defendants withdrew the comparative negligence defense and obtained a ruling that the trial court would not instruct the jury on comparative negligence. The jury returned a defense verdict of no liability.
On appeal, the Third District stated that "[a] defendant has a right to waive any defense." Id. at 1343. The court determined that the trial court had properly refused to instruct the jury on comparative negligence when the defendant had withdrawn the defense at the charge conference. Nothing in the Bryant opinion indicates that the plaintiffs had pleaded comparative fault in their complaint, and *698 Bryant does not address whether a plaintiff may acknowledge, in its complaint, its own comparative fault.
Here, although Philip Morris had withdrawn its affirmative defense of comparative negligence, Arnitz had pleaded comparative fault in his amended complaint. Arnitz's theory of his case was that although he was aware of health risks associated with smoking cigarettes and, therefore, was partly to blame for having smoked despite knowing those risks, he was unaware of the design defects in Philip Morris's cigarettes that made them even more dangerous. We agree with Arnitz that if a plaintiff chooses to plead his own comparative fault, a defendant should not be able to control the plaintiff's theory of his case and preclude the plaintiff from accepting some responsibility for his injuries.
Philip Morris contends that Martinello v. B & P USA, Inc., 566 So.2d 761 (Fla. 1990), also supports its position. There, the court determined that the plaintiff was not precluded from asserting its attractive nuisance theory. The defendant had admitted that the injured child was an invitee, not a trespasser, thus making the doctrine of attractive nuisance inapplicable. The supreme court determined that the plaintiff was entitled to try the case on his attractive nuisance theory, which was an "all-or-nothing claim," and
not have the jury treat [the child] as an invitee where a partial recovery was possible through comparative negligence. In this case, the trial court and the Fourth District Court of Appeal permitted the defendant, rather than the plaintiff, to choose the theory under which this case was to be tried. We find that the plaintiff must be allowed that choice in these circumstances.
Id. at 764.
Here, Phillip Morris asserts that it must be allowed the choice in which defenses it raises. However, as recognized in Martinello, Arnitz, as plaintiff, must be allowed to choose the theory under which his case is tried. Arnitz admitted that he was partly responsible for his injuries because he continued to smoke after he became aware of the health risks associated with smoking; but he also contended that Philip Morris brand cigarettes had a design defect that made them even more dangerous and that he and other consumers were unaware of this increased health risk. We conclude that the trial court did not err in allowing Arnitz to present his theory of the case to the jury and, based on the pleadings, in instructing the jury on comparative negligence.
Further, Philip Morris argues that Arnitz's design defect claim is barred by federal preemption principles. Arnitz contended that Philip Morris brand cigarettes had a design defect because Philip Morris placed additives in its cigarettes to make them more inhaleable than natural tobacco; Philip Morris flue cured the tobacco, heightening the cancer risk; and some of the additives Philip Morris used changed the nicotine to freebase nicotine. We conclude that federal law does not preempt the design defect claim. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 523, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion) (recognizing that the 1969 Federal Cigarette Labeling and Advertising Act "does not generally preempt `state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes'" (quoting Brief for Respondents 14)); Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 940 (Fla. 2000) (quoting Cipollone, 505 U.S. at 524-25, 112 S.Ct. 2608, for the proposition that the 1969 Act does not "`pre-empt petitioner's claims that rely solely on respondent's *699 testing or research practices or other actions unrelated to advertising or promotion'"); Ferlanti v. Liggett Group, Inc., 929 So.2d 1172, 1174 (Fla. 4th DCA 2006) (holding "that to the extent appellant's claims are based on a design defect in the cigarettes smoked by the decedent, her claims are not barred by the doctrine of conflict preemption"); see also Laschke v. Brown & Williamson Tobacco Corp., 766 So.2d 1076 (Fla. 2d DCA 2000) (holding that failure to warn and conspiracy to commit fraud claims were preempted for acts after 1969 but determining that strict liability design defect claim survived motion for summary judgment).
For the foregoing reasons, we affirm the final judgment in the amount of $240,000 in favor of Arnitz.
Affirmed.
KELLY and CANADY, JJ., Concur.