# Third District Court of Appeal

## State of Florida

Opinion filed July 30, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1015
Lower Tribunal No. 07-46340
_____

**R.J. Reynolds Tobacco Company**,
Appellant,

vs.

**Jennifer Rey, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jennifer D. Bailey, Judge.

King & Spalding LLP and William L. Durham II (Atlanta, GA) and Drew T. Bell (Austin, TX), for appellant.

Celene Humphries, PLLC, and Celene H. Humphries (Spring City, TN), for appellees.

Before LINDSEY, MILLER, and GOODEN, JJ.

LINDSEY, J.

Appellant R.J. Reynolds Tobacco Company appeals from a Final Judgment, following a jury trial, in favor of Appellees Jennifer and Fernando C. Rey, personal representatives of their deceased father's Estate (the "Estate"). The jury awarded $13.5 million in compensatory damages— reduced to $8.1 million based on the jury's allocation of fault—in the underlying wrongful death action. On appeal, Reynolds argues the trial court abused its discretion by instructing the jury on fraudulent concealment and conspiracy, which were not claims before the jury at trial.[1] We agree and therefore reverse and remand for a new trial on strict liability and negligence.

## I.    BACKGROUND

This is an Engle progeny case.[2] After smoking cigarettes for more than 30 years, Fernando F. Rey was diagnosed with lung cancer. He passed

---

[1] Reynolds also argues the trial court abused its discretion by denying its cause challenge in jury selection. Because we reverse and remand for a new trial on the jury instruction issue, we do not address the jury selection issue.

[2] In 1994, Howard Engle and other smokers and their survivors filed a class action against several tobacco companies, including Reynolds, for alleged smoking-related injuries. The first phase of litigation involved a yearlong trial, after which a jury made findings on common liability issues related to the tobacco companies' conduct. The Florida Supreme Court ultimately decertified the class because individualized issues of legal causation, comparative fault, and damages predominated. Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006) (commonly referred to as "Engle III" due to its procedural posture). But the Engle III Court also held that certain findings

away shortly thereafter. Rey's Estate then sued Reynolds for negligence, strict liability, fraudulent concealment, and conspiracy.

Reynolds moved for summary judgment on the Estate's fraudulent concealment and conspiracy claims, arguing that the Estate presented no evidence that Rey relied on any false or misleading statements made by Reynolds. See Prentice v. R.J. Reynolds Tobacco Co., 338 So. 3d 831, 837 (Fla. 2022) ("[T]o prevail on fraudulent concealment and concealment conspiracy claims, an Engle progeny plaintiff must prove reliance on a statement that was made by an Engle defendant (for a concealment claim) or co-conspirator (for a conspiracy claim) and that concealed or omitted material information about the health effects or addictiveness of smoking cigarettes."). The trial court granted Reynolds's unopposed Motion, leaving only the Estate's strict liability and negligence claims, for which it sought compensatory and punitive damages.

from the first phase have res judicata effect in Engle progeny cases. See Engle findings infra note 3.

Despite no longer having claims for fraudulent concealment and conspiracy, the Estate argued it was entitled to have the following Engle findings[3] on fraudulent concealment and conspiracy read to the jury:

> 4. [Reynolds] concealed or omitted material information not otherwise known or available, knowing that the material was false or misleading, or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes, or both.
>
> 5. [Reynolds] agreed with other companies and industry organizations to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and members of the public would rely on this information to their detriment.

The Estate argued these findings were relevant for comparative negligence and to prove design defect.

---

[3] In Engle III, the Florida Supreme Court held that the following jury findings from the first phase in the Engle litigation have res judicata effect in Engle progeny cases:

> Questions 1 (general causation), 2 (addiction of cigarettes), 3 (strict liability), 4(a) (fraud by concealment), 5(a) (civil-conspiracy-concealment), 6 (breach of implied warranty), 7 (breach of express warranty), and 8 (negligence).

945 So. 2d at 1145-46.

4

Reynolds objected, arguing that because the Estate had no claims for fraudulent concealment or conspiracy, those <u>Engle</u> findings were irrelevant, prejudicial, and likely to confuse the jury. The trial court ultimately overruled Reynolds's objection and gave the jury a preliminary instruction that the <u>Engle</u> findings on fraudulent concealment and conspiracy would apply in this case if the jury found Rey to be a member of the <u>Engle</u> class.[4] The court concluded these findings were relevant to prove the Estate's product defect claims.

To mitigate potential confusion, Reynolds requested the following final jury instruction:

> There is no claim in this case for fraudulent concealment or omission of material information about the dangers or addictive nature of smoking. Nor is there any claim that Reynolds entered into an agreement to conceal or omit information about the dangers or addictive nature of smoking.

The trial court rejected Reynolds's proposed instruction.

---

[4] The jury was instructed that to establish class membership, the Estate must prove by the greater weight of the evidence (1) that Rey was addicted to cigarettes containing nicotine; and (2) that the addiction was a legal cause of his lung cancer.

The Estate, in its proposed final jury instructions, again requested the Engle fraudulent concealment finding.[5]  Reynolds again objected.  The trial court overruled Reynolds's objection and granted the Estate's requested final jury instruction on fraudulent concealment.  Consequently, the jury was once more instructed that if it found that Rey was a member of the Engle class, it must accept as true that Reynolds "concealed or omitted material information not otherwise known or available, knowing that the material was false or misleading, or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes, or both."

The jury found that Rey was a member of the Engle class.  It assigned 40% fault to Rey and awarded $13.5 million in compensatory damages.  The jury also found that punitive damages were not warranted.  The trial court reduced the compensatory damages to $8.1 million based on the jury's allocation of fault and entered Final Judgment.  Reynolds timely appealed.

## II.    ANALYSIS

We review jury instructions under the abuse of discretion standard. E.g., Beltran v. Rodriguez, 36 So. 3d 725, 728 (Fla. 3d DCA 2010).  "'Jury instructions must relate to issues concerning evidence received at trial', and

---

[5] The Estate agreed not to give the jury a final instruction on the Engle conspiracy finding.

6

confusing, contradictory, or misleading instructions should not be given." Hall v. State, 614 So. 2d 473, 476 (Fla. 1993) (quoting Butler v. State, 493 So. 2d 451, 452 (Fla. 1986)). "Reversal is required where a jury might reasonably have been misled, regardless of whether it has actually been misled." Jacobs v. Westgate, 766 So. 2d 1175, 1180 (Fla. 3d DCA 2000).

On appeal, Reynolds argues that the trial court abused its discretion because it "repeatedly instructed the jury on findings against Reynolds by a different jury in a different case on fraud and conspiracy claims that were not at issue in this case." We agree.

Below, the Estate asserted that under Engle III, it was entitled to "every single one" of the Engle findings, even though it had no claims for fraudulent concealment or conspiracy. In Engle III, the Florida Supreme Court approved eight common liability findings from the first phase of the Engle class action litigation that have res judicata effect in Engle progeny actions. 945 So. 2d at 1269 ("Class members can choose to initiate individual damages actions and the Phase I common core findings we approved above will have res judicata effect in those trials."). But nothing in Engle III entitles an Engle progeny plaintiff to all eight findings in all circumstances.

As Engle III itself explains, the doctrine of res judicata means a judgment on the merits in a former suit is conclusive "between the same

7

parties or their privies, *upon the same cause of action*." Id. at 1259 (emphasis added) (quoting Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001)). Subsequent Engle progeny cases consistently repeat this straightforward principle. See Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 429 (Fla. 2013) ("Individual class plaintiffs . . . can rely on the Phase I jury's factual findings to establish the conduct elements of the asserted claims without having to independently prove up those elements or demonstrate the relevance of the findings to their lawsuits, assuming they assert the same claims raised in the class action." (citation modified) (quoting R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010))); Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219, 1230 (Fla. 2016) ("Engle III . . . suggests that in order to take advantage of the Phase I findings, progeny plaintiffs must file the same claims." (quoting Soffer v. R.J. Reynolds Tobacco Co., 106 So. 3d 456, 463 (Fla. 1st DCA 2012) (Lewis, J., concurring in part and dissenting in part))).

Indeed, the Estate's own proposed jury instructions undermine its argument that it is entitled to "every single one" of the Engle findings. For example, the first Engle finding sets forth numerous diseases and medical

conditions caused by cigarette smoking.[6]  But here—as is common practice in Engle progeny cases—the jury was only instructed that smoking causes the disease responsible for Rey's death, lung cancer.  Similarly, the sixth and seventh Engle findings concern breach of implied and express warranty, which were among the causes of action addressed in Phase I.  Here, by contrast, the Estate did not bring breach of warranty claims and therefore did not seek to instruct the jury on these Engle findings.  We therefore conclude that Engle III does not entitle an Engle progeny plaintiff to Phase I findings that are not relevant to the claims being asserted.

The Estate argues that the fraud and conspiracy Engle findings were relevant to prove comparative fault and design defect.[7]  The Estate also contends that even if the trial court abused its discretion, the error was

---

[6] The full list of diseases and medical conditions is as follows: "aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, adenocarinoma [sic], large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer."  Engle III, 945 So. 2d at 1277.

[7] On appeal, the Estate focuses on the fraudulent concealment Engle finding.  We address fraudulent concealment and conspiracy together because both findings were given to the jury, and our analysis as to both is the same.

9

harmless.[8]  We address these three arguments in turn.  We conclude by briefly addressing the Dissent.

    a. Comparative Fault

According to the Estate, the fraud and conspiracy findings were relevant to comparative fault because Reynolds's concealment affected Rey's ability to make a knowing decision to smoke.  We disagree because the trial court's order granting Reynolds's unopposed motion for summary judgment established that Rey, as a matter of law, did not rely on Reynolds's concealment.

Reynolds's Motion for Summary Judgment was based on Prentice, in which the Florida Supreme Court decided "what proof is required to prevail on the reliance element of [Engle progeny] fraudulent concealment and conspiracy claims."[9]  338 So. 3d at 834.  The Court held that an Engle

---

[8] The Estate also argues that Reynolds waived its challenges to the jury instructions.  This is unsupported by the record.  Reynolds repeatedly and consistently objected to the challenged instructions and even sought a clarifying instruction.

[9] Specifically, the Court resolved a district split on reliance.  "[A]lthough all Florida courts agree that fraudulent concealment and concealment conspiracy claims include a reliance element, the Second, Third, and Fourth Districts have held that an Engle progeny plaintiff need not prove reliance on a statement."  Prentice, 338 So. 3d at 836.  The First District, by contrast, had held that "Engle plaintiffs must prove detrimental reliance on fraudulent statements."  R.J. Reynolds Tobacco Co. v. Whitmire, 260 So. 3d 536, 537

10

progeny plaintiff "must prove reliance on a statement that was made by an Engle defendant." Id.

Reynolds argued that because the Estate did not proffer any evidence that Rey relied on any false or misleading statement by Reynolds (or an Engle co-conspirator), Reynolds was entitled to summary judgment on the Estate's fraud and conspiracy claims. Indeed, as Reynolds further argued, the undisputed evidence was that Rey knew about and understood the risks of smoking. The Estate did not oppose Reynolds's motion, and the trial court entered summary judgment in favor of Reynolds on the fraud and conspiracy claims.

Here, the trial court's Summary Judgment Order established that there was no proof that Rey "received, believed, and acted upon [Reynolds's] statements that omitted the material information." See id. at 840. Therefore, the Engle fraud and concealment findings could not have been relevant to the jury's determination of comparative fault.

b. Design Defect

The Estate's second rationale for the relevance of the Engle fraud and conspiracy findings is to prove design defect. Specifically, the Estate argues

---

(Fla. 1st DCA 2018). The Prentice Court agreed with the First District. 338 So. 3d at 842.

11

that the findings were relevant for the consumer expectations test. "This test intrinsically recognizes that a manufacturer plays a central role in establishing the consumers' expectations for a particular product, which in turn motivates consumers to purchase the product." Aubin v. Union Carbide Corp., 177 So. 3d 489, 503 (Fla. 2015).

To begin with, it is undisputed that the consumer expectations test was not relevant for compensatory damages. This is because the product's defect is established by the third Engle finding: "Reynolds . . . placed cigarettes on the market that were defective and unreasonably dangerous." The jury was instructed that it must accept this finding as true if it found that Rey was a member of the Engle class.

The Estate argues that because it had to prove design defect for punitive damages, the fraud and concealment findings were relevant. But this ignores the underlying reason for independently proving defect to recover punitive damages. The parties agreed to instruct the jury that it could not consider any of the Engle findings when determining punitive damages:

> For purposes of determining whether punitive damages are warranted . . . you may not consider in any way the Engle findings regarding R.J. Reynolds's conduct. You must make your determination regarding whether punitive damages may be warranted based solely on the factual evidence presented to you in this trial.

The Estate could not rely on the third Engle finding to establish defect because the jury was not permitted to consider any of the Engle findings for punitive damages.[10]  *But for this same reason*, the Estate could not rely on the fraud and conspiracy Engle findings to establish defect.  Because the fraud and conspiracy findings were irrelevant to establish design defect in the context of compensatory damages and could not be used to prove defect for punitive damages, we conclude that the trial court abused its discretion.

c. Harmless Error

The Estate argues that should this Court determine that the trial court abused its discretion, any error was harmless.  See Monzon v. R.J. Reynolds Tobacco Co., 388 So. 3d 930, 931 (Fla. 3d DCA 2024) ("A trial court's decision on jury instructions is reviewed for abuse of discretion and should not be overturned on appeal absent a showing of prejudicial error." (citation modified) (quoting Int'l Sec. Mgmt. Grp., Inc. v. Rolland, 271 So. 3d 33, 44 (Fla. 3d DCA 2018))).  We disagree that the error here is harmless.

---

[10] As the First District observed in R.J. Reynolds Tobacco Co. v. Harris, 346 So. 3d 643 (Fla. 1st DCA 2022), this is a common instruction in Engle progeny cases.  "[Reynolds] provided the trial court with citations to trial transcripts from thirty other Engle progeny cases in which the juries had been instructed using the same or substantially similar instruction . . . ." Id. at 646. The court further explained that "[t]he Estate bore the burden to prove entitlement to punitive damages by clear and convincing evidence. § 768.725, Fla. Stat. . . . Yet the Engle findings were made by an earlier jury under the greater-weight-of-the-evidence standard." Id. at 647.

Under the test for harmless error, "the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014). Here, the Estate has not satisfied its burden because there is a reasonable possibility that the jury was misled. See Aubin, 177 So. 3d at 517 ("In determining whether an erroneous jury instruction amounts to reversible error, the appellate court must assess whether the instruction reasonably might have misled the jury.").

The jury was instructed that if it found that Rey was an Engle class member, it *must* accept as true that Reynolds engaged in fraud by concealment. But why? The trial court granted summary judgment for Reynolds on the Estate's fraudulent concealment and conspiracy claims, so these claims were not before the jury. Moreover, the parties agreed to instruct the jury that it could not consider the Engle findings for punitive damages. See Nordin v. Gregory, 566 So. 2d 60, 61 (Fla. 5th DCA 1990) ("[I]t must be presumed that the jury correctly followed the court's instructions . . . ."). And indeed, the jury did not award any punitive damages. Given the claims before it and forbidden from applying the fraudulent concealment finding to punitive damages, the jury would logically search for some other

14

way to apply the irrelevant finding. We therefore must conclude that there is a reasonable possibility the error contributed to the verdict.

### d. The Dissent

We write briefly to explain our disagreement with the Dissent's position that the challenged instructions were relevant to comparative fault. The trial court squarely and soundly rejected this argument and did not abuse its discretion in doing so. Below, the trial court asked the Estate under what theory the Engle concealment findings were relevant given the Estate's concession that this is not a failure to warn case.[11] The Estate maintained that information not available to Rey because of Reynolds's silence was part of the comparative fault equation. The trial court correctly rejected this argument:

> THE COURT: . . . But [Rey's] comparative fault can only be measured by what was available to him. It cannot be measured -- his percentage cannot be measured by what Reynolds withheld.

Though it is undisputed that this is not a failure to warn case, the Dissent improperly imposes a duty to warn on Reynolds in concluding that Reynolds's silence was relevant to comparative fault.

## III. CONCLUSION

---

[11] See Engle III, 945 So. 2d at 1273 ("[C]ompliance with the federal warnings preempted any claim based on failure to warn . . . .").

15

Here, the trial court abused its discretion by instructing the jury on the fraudulent concealment and conspiracy <u>Engle</u> findings because there were no fraudulent concealment or conspiracy claims before the jury. Those findings were not relevant to comparative fault or to establish design defect and therefore likely misled the jury. Accordingly, we reverse the Final Judgment and remand for a new trial on Reynolds's negligence and strict liability claims.

Reversed and remanded.

GOODEN, J., concurs.

MILLER, J., dissenting,

I am compelled to respectfully dissent from the majority opinion in this Engle-progeny case. In my view, the challenged Engle findings correctly encapsulated the law and were directly relevant to RJR's comparative fault defense.[12] It therefore cannot be said that "no reasonable man would take

---

[12] Appellees alternatively posit that the Engle findings were relevant to proving product defect. Evidence of deceitful conduct in marketing is probative of whether cigarettes were unreasonably dangerous beyond the level that an ordinary consumer would reasonably expect. See Aubin v. Union Carbide Corp., 177 So. 3d 489, 503 (Fla. 2015) ("Th[e] [consumer expectations] test intrinsically recognizes that a manufacturer plays a central role in establishing the consumers' expectations for a particular product, which in turn motivates consumers to purchase the product."); Liggett Grp., Inc. v. Davis, 973 So. 2d 467, 478 (Fla. 4th DCA 2007) (Warner, J., specially concurring) ("[W]e look to the consumer expectation test to determine strict liability . . . . While [the tobacco company] presented a wealth of information that the dangers of smoking were well-known during the period when [the plaintiff] smoked Chesterfields, the tobacco industry also made a concerted effort to discredit those studies and to allay people's fears."). And notably, RJR itself requested the jury be instructed on the consumer expectations test, and the instruction the jury received did not textually limit itself to punitive damages. Moreover, RJR has cited no authority for the proposition that the trial court is constrained from providing the jurors multiple Engle findings bearing on a single issue. Cf. Philip Morris USA Inc. v. McCall, 234 So. 3d 4, 10 (Fla. 4th DCA 2017) ("The Engle class action jury went on to find the tobacco defendants liable for the class' injuries and in doing so, made a myriad of 'common core' findings regarding the health effects of smoking cigarettes, the addictive properties of nicotine, and the tobacco companies' actions.").

17

the view adopted by the trial court." Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) (quotation omitted).

## I

Trial courts enjoy broad discretion in formulating jury instructions. See Barbour v. Brinker Fla., Inc., 801 So. 2d 953, 959 (Fla. 5th DCA 2001). The decision to give an instruction is not reversible "unless the error complained of resulted in a miscarriage of justice or the instruction was reasonably calculated to confuse or mislead the jury." Barton Protective Servs., Inc. v. Faber, 745 So. 2d 968, 974 (Fla. 4th DCA 1999).

## A

In Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), the Florida Supreme Court extended res judicata effect to "Phase I" jury findings "that the [tobacco] defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both" and "agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment." Id. at 1277. Engle-progeny plaintiffs are

18

entitled to a jury instruction reflecting these findings. See R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010).

**B**

At common law, a plaintiff's contributory negligence, no matter how slight, was a complete bar to recovery. See, e.g., Medina v. McAllister, 202 So. 2d 755, 759 (Fla. 1967) ("Plaintiff's contributory negligence, even in a slight degree, bars recovery if it is a proximate cause of the occurrence."). In 1973, the Florida Supreme Court judicially abrogated contributory negligence, adopting in its place a "pure" comparative fault system. In the landmark case of Hoffman v. Jones, 280 So. 2d 431 (Fla. 1973), the court reasoned that comparative negligence allowed for an equitable allocation of liability based on the percentage of wrongful conduct attributable to each party. See id. at 437–38.

Our legislature has since enacted a modified comparative negligence standard. See H.R. 837, 28th Leg., 1st Reg. Sess. (Fla. 2023) (adding subsection (6) to section 768.81, Florida Statutes (2023), to establish modified comparative negligence standard for negligence actions, effective March 24, 2023). Under the new statutory edict, a plaintiff found to be more than fifty percent at fault for his or her injury cannot recover. See § 768.81(6), Fla. Stat. (2023) ("In a negligence action to which this section

19

applies, any party found to be greater than 50 percent at fault for his or her own harm may not recover any damages.").[13]

Key to any comparative fault system is that "the fact finder must assess degrees of fault, not the degrees of causation."  3 Speiser et al., American Law of Torts § 13:24 (Monique C. M. Leahy ed., 2023).  This assessment naturally requires the jury to consider the totality of the circumstances bearing on either party's negligence in apportioning fault.  See Metropolitan Dade County v. Cox, 453 So. 2d 1171, 1174–75 (Fla. 3d DCA 1984); see also Guido Calabresi & Jeffrey O. Cooper, New Directions in Tort L., 30 Val. U. L. Rev. 859, 872 (1996) ("Under comparative negligence, . . . we are in a position to ask how important the capacity of each side to avoid the accident was.  We can do it taking into account both failed capacity to opt for safety that arose out of faulty behavior, and failed capacity to opt for safety that we do not choose to call 'wrong' or 'undesirable,' but which nevertheless had a part in the occurrence of the accident.").  "Obviously, this cannot be done without complete information as to the quantity, quality, nature and degree

---

[13] The amendment excludes negligence actions sounding in medical malpractice.  See § 768.81(6), Fla. Stat. ("This subsection does not apply to an action for damages for personal injury or wrongful death arising out of medical negligence pursuant to chapter 766.").

20

of the defendant's conduct so that the jury knows just what to 'compare' with its assessment of the plaintiff's." Cox, 453 So. 2d at 1173.

## C

In the case at hand, RJR raised comparative fault as an affirmative defense. It contended Mr. Rey was responsible for his own injury and death because he was aware of the associated harms but nonetheless made the unconstrained, autonomous decision to smoke. Appellees admitted Mr. Rey was partially at fault but sought to counter the defense by juxtaposing RJR's knowledge with Mr. Rey's knowledge at critical points in time. In this vein, they focused their arguments on the role RJR played in socially normalizing smoking when Mr. Rey was a teenager and further asked the jurors to consider the superior knowledge RJR and its executives and scientists possessed as to nicotine manipulation and addiction—information they concealed from members of the public, which necessarily included Mr. Rey.

Given this landscape, our precedent supports the position that the challenged Engle findings were probative of the respective negligence of the parties. See Carnival Cruise Lines, Inc. v. Levalley, 786 So. 2d 18, 19 (Fla. 3d DCA 2001) (explaining that "evidence [that] the plaintiff falsely concealed" information from the defendant was "directly relevant to . . . her comparative negligence"); cf. Van Tuyn v. Zurich Am. Ins. Co., 447 So. 2d 318, 321 (Fla.

21

4th DCA 1984) ("If, however, the defendants' actions increase or add risks not normally inherent in the activity, a duty arises and they may be found negligent."). Whether Mr. Rey made an informed choice to continue smoking necessarily turned on whether he fully understood the associated risks. The fact that RJR concealed and omitted material information stymied the public's ability to assess those risks. See Blackburn v. Dorta, 348 So. 2d 287, 293 (Fla. 1977) ("[T]he affirmative defense of implied assumption of risk is merged into . . . the principles of comparative negligence . . . ."); Donaldson v. Cenac, 675 So. 2d 228, 230 (Fla. 1st DCA 1996) ("Assumption of the risk cannot apply unless a plaintiff actually knows or in law is deemed to know that a particular risk—here the risk of negligent injury—was present, and understood the nature of the risk."); McAllister v. Robbins, 542 So. 2d 470, 471 (Fla. 1st DCA 1989) ("[A] person is not required to take measures to avoid a danger which the circumstances as known to him do not suggest as likely to happen."); Henry v. Britt, 220 So. 2d 917, 919 (Fla. 4th DCA 1969) ("[I]t must be kept in mind that voluntary exposure is the bedrock upon which the doctrine of assumed risk rests."); Jones v. Crews, 204 So. 2d 24, 26 (Fla. 4th DCA 1967) ("Knowledge of the risk is an essential to the defense of assumption of the risk. When dealing with the element of knowledge of the risk, the standard to be applied is a subjective one of what the particular

22

plaintiff in fact sees, knows, understands, and appreciates."); Matthew J. Toddy, Assumption of Risk Merged with Contributory Negl.: Anderson v. Ceccardi, 45 Ohio St. L.J. 1059, 1074 (1984) ("[T]he plaintiff's knowledge of the risk is simply another circumstance to be weighed against the plaintiff in the comparative fault analysis.") (citing Blackburn, 348 So. 2d at 293); see also O'Connell v. Walt Disney World Co., 413 So. 2d 444, 449 (Fla. 5th DCA 1982) (reversing summary judgment where the movant "did not carry its burden of establishing . . . that [the non-movants] fully understood the risks and dangers involved in riding a horse" or demonstrating that they "understood and agreed to assume the risk of [the movant]'s negligence in conducting the ride"); Philip Morris USA, Inc. v. Arnitz, 933 So. 2d 693, 698 (Fla. 2d DCA 2006) ("Arnitz admitted that he was partly responsible for his injuries because he continued to smoke after he became aware of the health risks associated with smoking; but he also contended that Philip Morris brand cigarettes had a design defect that made them even more dangerous and that he and other consumers were unaware of this increased health risk. We conclude that the trial court did not err in allowing Arnitz to present his theory of the case to the jury and . . . in instructing the jury on comparative negligence."). The jurors ostensibly understood and appreciated this chain of reasoning since they carefully apportioned fault between the parties.

23

The pretrial ruling invoked by the majority does not alter this conclusion. In its order, the trial court granted summary judgment for RJR on appellees' fraudulent concealment and conspiracy claims, finding no record evidence Mr. Rey "received, believed, and acted upon [RJR's] statements that omitted material information." Core to this finding was a failure of proof of individualized reliance on a specific statement.

Casting aside the fact that the word "statement" implicates verbal and nonverbal assertions, see Bryan A. Garner, Garner's Dictionary of Legal Usage 842 (3d ed. 2011) ("[T]he word statement in law commonly includes expressive nonverbal behavior as well as the spoken word."), whereas the challenged Engle findings implicate pure silence, see Prentice v. R.J. Reynolds Tobacco Co., 338 So. 3d 831, 837 (Fla. 2022) ("The key distinction is between making statements that are misleading by omission, on the one hand, and pure silence or a passive failure to disclose, on the other."); see also Garner, supra, at 632 ("To the nonlawyer, an omission is either something left out . . . or the act of leaving something out. To the lawyer, omission . . . ordinarily denot[es] the failure to do something."); id. at 190 (defining "conceal" as "keep[ing] from the knowledge of other; refrain[ing] from disclosing"), invoking the summary judgment ruling to bar Engle findings relevant to comparative fault conflates the parties' respective

burdens of proof. That appellees could not pursue relief on their fraudulent concealment and conspiracy claims does not render RJR's conduct irrelevant as to its comparative negligence affirmative defense. See, e.g., Bongiorno v. Americorp, Inc., 159 So. 3d 1027, 1029 (Fla. 5th DCA 2015) ("Comparative negligence is an affirmative defense; thus, the party asserting the defense bears the burden of proving that the negligence of the other party was a cause of the accident."); State Farm Mut. Auto. Ins. Co. v. Curran, 135 So. 3d 1071, 1079 (Fla. 2014) ("An affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability.") (quotation marks omitted); cf. § 45.011(2), (3), Fla. Stat. (2023) ("(3) 'Plaintiff' means any party seeking affirmative relief. . . . (2) 'Defendant' means any party against whom relief as referenced in subsection (3) is sought.").

As previously discussed, RJR's theory was that Mr. Rey chose to smoke despite having full knowledge of the associated health risks. The Engle findings imputed superior knowledge of those risks to RJR. This knowledge, coupled with RJR's silence, bore on the degree of fault attributable to Mr. Rey in deciding to smoke. See Gerald v. R.J. Reynolds Tobacco Co., 68 V.I. 3, 21 (V.I. Super. Ct. 2017) ("Evidence regarding whether Decedents would have smoked a safer cigarette relates the alleged

25

contribution of Decedents to their own losses or injuries, while evidence of the public's awareness of the risks inherent in cigarette smoking pertains to Decedents' implied assumption of risk.  This evidence speaks to Decedents' contributory negligence, which under [the comparative negligence statute], must be presented to the jury, who may then allocate fault accordingly under the . . . statute.") (internal alterations and quotation marks omitted); cf. Greene v. Karpeles, No. 14 C 1437, 2021 WL 2550067, at *5 (N.D. Ill. June 22, 2021) ("It is impossible to believe, let alone act upon, a statement of which one is unaware.") (internal alteration and quotation marks omitted). Accordingly, from my perspective, the trial judge properly instructed the jury.